NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1577-12T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHAD BIVINS,

    Defendant-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **May 13, 2014** |
| **APPELLATE DIVISION** |

Argued January 8, 2014

Before Judges Sapp-Peterson and Lihotz.

Telephonically reargued March 27, 2014 – Decided May 13, 2014

Before Judges Sapp-Peterson, Lihotz and Maven.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 11-06-1396.

Lauren S. Michaels, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ms. Michaels, of counsel and on the briefs).

Jane C. Schuster, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Ms. Schuster, of counsel and on the brief).

The opinion of the court was delivered by

SAPP-PETERSON, P.J.A.D.

In this appeal, we consider whether the scope of the permissible area and persons to be searched, pursuant to a search warrant, extends to the location where defendant Chad Bivins and his co-defendant Sayid Jordan were found, seated in a Pontiac, parked five or six houses away from the premises where a search warrant was being executed.  The motion judge denied the motion to suppress the evidence seized following the search of the two men, finding that Bivins's and Jordan's removal from the vehicle and the contemporaneous search of the two men were actions within the scope of the warrant being executed.  Based upon our review of the record in light of <u>Bailey v. United States</u>, __ <u>U.S.</u> __, 133 <u>S. Ct.</u> 1031, 185 <u>L. Ed.</u> 2d 19 (2013), a decision rendered after the trial court denied the motion, we now reverse.

I.

We derive the facts from the suppression motion at which defendant and Trooper Matthew Moore testified.  Our standard of review requires that we accord deference to the motion judge's credibility assessments.  <u>State v. Rockford</u>, 213 <u>N.J.</u> 424, 440 (2013) ("An appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." (citations and internal

quotation marks omitted)). Although defendant also testified, we consider the legal issues implicated in this appeal based upon the testimony of Trooper Moore, whose testimony the trial court credited in upholding the search.

On March 29, 2011, police executed a "no-knock" warrant at a residence located on Park Boulevard in Camden. The search warrant identified the residence as a "two (2) story single family dwelling located on the south side of Park Boulevard, between Haddon Avenue and Princess Street," and described that "[t]here are multiple concrete steps that lead to the front door." The search warrant commanded police executing the warrant to enter the premises and to search for property specified in the warrant and "all persons present reasonably believed to be connected to said property and investigation." Neither defendant, co-defendant Jordan, nor the grey Pontiac from which they were removed, were identified, in the affidavit submitted in support of the search warrant application, as persons or property suspected of being connected to the residence or investigation.

Trooper Moore was assigned as part of scene security, which he described as ensuring that no one entered or left the "crime scene" during the execution of the search warrant. Before the officers executing the search warrant entered the premises,

Trooper Moore positioned his vehicle about six or seven blocks away, near Camden High School.  He explained that once execution of the search warrant was underway, he was asked to "come down to the corner of Park and Princess and make sure nobody entered the sidewalk approaching the house or left the area."  He stated the plan called for the officers to enter the premises from its rear.  When he received the call that the search warrant was being executed, he proceeded towards his assigned location and testified:  "[A]s we were approaching, we got notification that somebody[1] was leaving the residence and they were approaching, I believe it was a Pontiac, and at that time somebody called out the description of the Pontiac[.]"

When Trooper Moore received the alert, he had not yet arrived at his assigned post, but as he pulled up, he noticed the "description of the vehicle they were talking about was sitting at the corner of Park and Princess[,] which is where [he] was assigned to go."  He "observed the grey Pontiac sitting there" and "believe[d] two individuals were in the car."  He testified that "we got them out, we checked them, and then I took them over to the case agent and turned them over to them."  In response to a question from the motion judge whether he found

---

[1] The record is not clear if there was one or more than one person observed leaving the residence.

anything on the two men, he stated that he believed "there was some crack on both individuals . . . approximately thirty [bags]" on each man. He described the location of the vehicle, in relation to the residence being searched, as five or six houses away, on the same side of the street. Finally, in response to the court's question whether he observed the two men "run into the vehicle," the trooper said: "No[,] I didn't. By the time I came in contact with them they were already where they were[.]"

The court denied the motion, finding that the search was within the "rubric" of the search warrant. The present appeal followed. Defendant raises a single point for our consideration:

> TROOPER MOORE DID NOT HAVE PROBABLE CAUSE TO PULL MR. BIVINS AND MR. JORDAN FROM THE CAR AND SEARCH THEM BASED ONLY ON INFORMATION THAT "TWO GUYS" HAD LEFT A HOUSE WHICH POLICE WERE SEARCHING PURSUANT TO A WARRANT, AND THAT THE GUYS WERE "APPROACHING" A GREY PONTIAC. ACCORDINGLY, THE FRUITS OF THE SEARCH MUST BE SUPPRESSED.

II.

When evaluating the constitutionality of police conduct in executing a search warrant, "[i]t is well settled that officers searching a person's home, car or belongings under authority of a search warrant are authorized to use only those investigatory methods, and to search only those places [or persons],

appropriate in light of the scope of the warrant." State v. Reldan, 100 N.J. 187, 195 (1985) (citing Harris v. United States, 331 U.S. 145, 152, 67 S. Ct. 1098, 1102, 91 L. Ed. 1399, 1407 (1947)). "An analysis of the reasonableness of the methods used in a search, as well as the areas searched, should focus upon whether the search in its totality was consistent with the object of the search." Ibid.

That analysis begins first with an examination of the terms of the search warrant, which must be strictly respected. Rockford, supra, 213 N.J. at 441. Thereafter, the analysis focuses upon police conduct in accomplishing the object of the search. State v. Rodriquez, 399 N.J. Super. 192, 200 (App. Div. 2008). Thus, in State v. Carlino, 373 N.J. Super. 377 (App. Div. 2004), certif. denied, 182 N.J. 430 (2005), we found the warrant was strictly respected and the officers' conduct objectively reasonable. Id. at 396. There, a warrant issued to search a suspected drug dealer's residence and Lexus authorized the officers to search "any and all persons arriving at, departing from and located therein reasonably believed to be associated with the investigation." Id. at 382 (internal quotation marks omitted). Plainclothes officers searching the garage and Lexus noticed an individual approach the residence and, without knocking or ringing the bell, open the door and

walk into the residence. Id. at 383. One of the officers followed the individual into the house, and the individual asked the whereabouts of the suspected drug dealer. Ibid. When the individual realized, however, that he was speaking to a police officer, he became visibly nervous and started clutching even harder a fanny bag he was holding in his hand. Ibid. In finding the seizure of the fanny bag justified, we did so based upon a number of factors, including that the individual appeared at the house after midnight, walked directly into the house without knocking, and became nervous and started to firmly clutch the bag he was holding once he realized he was speaking to a police officer, whose police badge was visible. Id. at 394-95.

More importantly, we concluded the "[d]efendant mischaracterize[d] the scope and meaning of the search warrant." Id. at 392. We noted:

> The search warrant did not authorize a search of "all persons present." Rather, the warrant provided for the police to determine on-the-spot whether or not a person's presence at the time and given the circumstances establishes a reasonable belief that the individual is involved in criminal activity. The search warrant was issued for a home allegedly used for the continued distribution of cocaine and other narcotics. Defendant's presence was more than just a mere coincidence. Defendant appeared at the home at midnight when a merely social visit would be unlikely.

> Defendant arrived at the residence and walked directly inside. Under these facts, the police had probable cause to search defendant upon entering the home after midnight.
>
> [Id. at 392-93.]

Our reasoning in Carlino was consistent with the United States Supreme Court's decision in Michigan v. Summers, 452 U.S. 692, 711, 101 S. Ct. 2587, 2598, 69 L. Ed. 2d 340, 355 (1981), where the Court held that a "warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Thus, unless the search warrant authorizes the search of particular persons, the issuance of a search warrant does not necessarily authorize the search of persons found on or near the premises during the execution of the warrant; rather, police may detain such persons while evidence is sought. Ibid. In other words, beyond detaining persons present during the execution of the search warrant, the search of persons present during the search requires that police establish more than their mere presence. See, e.g., Ybarra v. Illinois, 444 U.S. 85, 91, 100 S. Ct. 338, 342, 62 L. Ed. 2d, 238, 245 (1970) (stating "a person's mere propinquity to others independently suspected of criminal activity does not, without

more, give rise to probable cause to search that person").  This point was most recently highlighted in Bailey.

In Bailey, the Court clarified its decision in Summers by holding that the limited authority to detain an occupant of a premises being searched is spatially constrained.  Bailey, supra, ___ U.S. at ___, 133 S. Ct. at 1042, 185 L. Ed. 2d at 33. The Court stated:  "Once an individual has left the immediate vicinity of a premises to be searched, . . . detentions must be justified by some other rationale."  Id. at ___, 133 S. Ct. at 1043, 185 L. Ed. 2d at 34.

There, police observed the petitioner and another individual leaving a gated area above a basement apartment for which police had obtained a search warrant to search for a weapon previously observed by a confidential informant during a drug purchase.  Id. at ___, 133 S. Ct. at 1036, 185 L. Ed. 2d at 27.  Both men matched the general description of the individual from whom the informant alleged he had purchased drugs.  Ibid. The two men entered a vehicle, and police followed the vehicle for approximately one mile before pulling it over.  Ibid. During questioning, the petitioner initially told police he had been coming from his apartment.  Ibid.  When he was told police were executing a search warrant at that apartment, the petitioner denied living there.  Ibid.  He later moved to

suppress the statement he made to police and a key to the apartment police seized from him.  Ibid.

The District Court denied the motion, concluding the petitioner's detention was justified under Summers.  Id. at ___, 133 S. Ct. at 1037, 185 L. Ed. 2d at 28.  The Second Circuit affirmed and the Supreme Court reversed.  Ibid.  The Court discussed the three law enforcement interests that justify the detention of an occupant who is on the premises during the execution of a search warrant:  officer safety, facilitating the completion of the search, and preventing flight.  Id. at ___, 133 S. Ct. at 1038, 185 L. Ed. 2d at 29.  The Court concluded none of those interests were impacted by petitioner's detention.  Id. at ___, 133 S. Ct. at 1042, 185 L. Ed. 2d at 34.

In addressing the first interest, officer safety, the Court noted

> "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence," and "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation."
>
> [Id. at ___, 133 S. Ct. at 1038, 185 L. Ed. 2d at 29 (quoting Summers, supra, 452 U.S. at 702-03, 101 S. Ct. at 2594, 69 L. Ed. 2d at 349-50).]

Turning to the second interest, the Court stated that "'the orderly completion of the search may be facilitated if the occupants of the premises are present.'" Id. at ___, 133 S. Ct. at 1040, 185 L. Ed. 2d at 31 (quoting Summers, supra, 452 U.S. at 703, 101 S. Ct. at 2595, 69 L. Ed. 2d at 350). Finally, as to the third law enforcement interest, "preventing flight in the event that incriminating evidence is found[,]" the Court explained this interest must be spatially constrained. Id. at ___, 133 S. Ct. at 1040, 185 L. Ed. 2d at 32 (quoting Summers, supra, 452 U.S. at 702, 101 S. Ct. at 2594, 69 L. Ed. 2d at 349-50). The Court reasoned:

> A spatial constraint defined by the immediate vicinity of the premises to be searched is therefore required for detentions incident to the execution of a search warrant. . . . Limiting the rule in Summers to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant ensures that the scope of the detention incident to a search is confined to its underlying justification. Once an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe.
>
>               . . . .
>
>        . . . A suspect's particular actions in leaving the scene, including whether he appears to be armed or fleeing with the evidence sought, and any information the officers acquire from those who are

A-1577-12T2

> conducting the search, including information that incriminating evidence has been discovered, will bear, of course, on the lawfulness of a later stop or detention. For example, had the search team radioed Detectives Sneider and Gorbecki about the gun and drugs discovered in the Lake Drive apartment as the officers stopped Bailey and Middleton, this may have provided them with probable cause for an arrest.
>
> [Id. at ___, 133 S. Ct. at 1042, 185 L. Ed. 2d at 33-34.]

Applying the Court's reasoning in Bailey to the present matter compels reversal. Trooper Moore did not witness the two men fleeing from the residence or entering the vehicle, in which they were seated, parked five or six houses away from the residence being searched. As noted earlier, it was undisputed the affidavit submitted in support of the search warrant application and the search warrant issued did not identify defendant, Jordan, or the grey Pontiac as persons or property to be searched. Additionally, the information conveyed by the search team to Trooper Moore did not report that the search team had found incriminating evidence related to defendant or that the individual(s) leaving the residence were suspected of being armed or possessing incriminating evidence. While defendant was in closer proximity to the residence being searched than the petitioner in Bailey, who was one mile away from the scene of the search, he was spatially still "beyond the immediate

vicinity of the premises to be searched."   Bailey, supra, ___
U.S. at ___, 133 S. Ct. at 1041, 185 L. Ed. 2d at 32.

Moreover, at the point when defendant and Jordan were removed from the Pontiac and searched, there was no legitimate law enforcement interest at stake to justify Trooper Moore's actions.   Id. at ___, 133 S. Ct. at 1038, 185 L. Ed. 2d at 29. Rather, dispatch had merely conveyed that "somebody was leaving the residence and they were approaching . . . a Pontiac," described as grey.   Based upon this information, it was not clear whether the person(s) seen approaching the grey Pontiac actually entered it.   Further, positioned six or seven blocks away at the time he received this information, and without other identifying information, Trooper Moore could not confirm that defendant and Jordan were the same person(s) observed leaving the premises and approaching the grey Pontiac.

The State urges that because defendant does not challenge the validity of the search warrant, "[p]robable cause is thus no longer in doubt[.]"   Since, however, we conclude the search of defendant was "beyond the immediate vicinity of the premises being searched," probable cause to search defendant cannot rest upon the search warrant.   Id. at ___, 133 S. Ct. at 1043, 185 L. Ed. 2d at 34.   Rather, justification for the search can only be upheld by application of traditional standards by which such

intrusions into a person's liberty are governed. Id. at ___,
133 S. Ct. at 1042, 185 L. Ed. 2d at 33.

As our Court has often stated, probable cause to search an
individual "is not susceptible of precise definition." State v.
Moore, 181 N.J. 40, 45 (2004). Rather, it is "'a fluid concept
— turning on the assessment of probabilities in particular
factual contexts — not readily, or even usefully, reduced to a
neat set of legal rules.'" State v. Basil, 202 N.J. 570, 585
(2010) (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S. Ct.
2317, 2329, 76 L. Ed. 2d 527, 544 (1983)). Probable cause
entails a "'practical, nontechnical conception' addressing 'the
factual and practical considerations of everyday life on which
reasonable and prudent men, not legal technicians, act.'" Ibid.
(quoting Gates, supra, 462 U.S. at 231, 103 S. Ct. at 2328, 76
L. Ed. 2d at 544). Thus, courts must determine whether the
State has met its burden in establishing that the warrantless
search of an individual was justified by considering the
totality-of-the-circumstances test set forth in Gates, supra,
462 U.S. at 238, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548. The
test is fact specific to each case and

> requires the court to make a practical,
> common sense determination whether, given
> all of the circumstances, there is a fair
> probability that contraband or evidence of a
> crime will be found in a particular place.
> The factors to be considered in applying

> that test include a police officer's common and specialized experience, and evidence concerning the high-crime reputation of an area[.] Although several factors considered in isolation may not be enough, cumulatively these pieces of information may become sufficient to demonstrate probable cause.
>
> [Moore, supra, 181 N.J. at 46 (citations and internal quotation marks omitted).]

During oral argument, the motion judge noted that absent the search warrant, the search "may have been an invalid arrest because [] defendants didn't do anything unlawful even assuming they ran from the house." Trooper Moore testified he had no independent involvement in the investigation, his role was limited to securing the "crime scene," and he had not observed defendant and Jordan leaving the premises or entering the car. Further, he did not testify the two men appeared nervous or made any furtive movements once he approached them seated in the vehicle. See State v. Jones, 287 N.J. Super. 478, 484 (App. Div. 1996) (upholding the search of a canister in the defendant's car where the defendant made furtive gestures, appeared nervous, exhibited bloodshot and dilated eyes, and was unable to produce driving credentials). Additionally, there is no indication that either defendant or Jordan were aware the premises were being searched. Even assuming that defendant, like the petitioner in Bailey, had just left the premises, this was insufficient in this instance "to justify an expansion of

the rule in <u>Summers</u>" to permit his seizure and the search that followed. <u>Bailey</u>, <u>supra</u>, \_\_\_ <u>U.S.</u> at \_\_\_, 133 <u>S. Ct.</u> at 1041, 185 <u>L. Ed.</u> 2d at 32.

To uphold defendant's seizure and the subsequent search under these factual circumstances "would give officers too much discretion. The categorical authority to detain incident to the execution of a search warrant must be limited to the immediate vicinity of the premises to be searched." <u>Ibid.</u> Parked five or six houses away from the premises being searched, arguably may have placed defendant within the line of sight of the premises and justified his detention. <u>Id.</u> at \_\_\_, 133 <u>S. Ct.</u> at 1042, 185 <u>L. Ed.</u> 2d at 33. Trooper Moore, however, did more than simply detain defendant. He seized him and immediately searched him. Neither defendant's nor Jordan's conduct or the information Trooper Moore possessed supported defendant's seizure and the search that followed. <u>Id.</u> at \_\_\_, 133 <u>S. Ct.</u> at 1041, 185 <u>L. Ed.</u> 2d at 32 (noting that "[t]he interest in preventing escape from police cannot extend this far without undermining the usual rules for arrest based on probable cause or a brief stop for questioning under standards derived from <u>Terry</u>[2]").

---

[2] <u>Terry v. Ohio</u>, 392 <u>U.S.</u> 1, 88 <u>S. Ct.</u> 1868, 20 <u>L. Ed.</u> 2d 889 (1968).

Finally, we reject the State's argument that Trooper Moore's conduct was objectively reasonable under State v. Handy, 206 N.J. 39, 54 (2011), and State v. Green, 318 N.J. Super. 346 (App. Div. 1999). The State urges there is ample support in the record to apply the proposition that a reasonable, but mistaken belief leading to an arrest does not render Trooper Moore's actions constitutionally deficient to warrant suppression of the evidence seized.[3] Neither decision supports the State's position.

In Handy, the Court acknowledged that "'room must be allowed for some mistakes by police.'" Handy, supra, 206 N.J. at 54 (quoting Illinois v. Rodriguez, 497 U.S. 177, 186, 110 S. Ct. 2793, 2800, 111 L. Ed. 2d 148, 159—60 (1990)). The Court qualified this principle by stating that police must have acted reasonably. Ibid. The Court found the police dispatcher, who the Court agreed the Appellate Division appropriately characterized as the "crucial link between the officer in the field and police headquarters," acted unreasonably because she was aware of discrepancies between the warrant and the

---

[3] Following the first oral argument, the State sought leave to file a supplemental letter brief, which we denied. At oral argument, the State nonetheless advanced the "objectively reasonable belief" position and we therefore, sua sponte, vacate the order denying leave to file the supplemental brief and have considered it.

information provided by the officer but took no further steps. Id. at 53. The Court affirmed the Appellate Division judgment reversing the trial court order denying the suppression motion. Id. at 54. Here, based upon the limited information Trooper Moore received, it may have been reasonable to detain defendant, but it was not objectively reasonable to seize him and conduct the full search that followed.

In Green, investigators from the Camden County Sheriff's Department had an arrest warrant for a fugitive named Corey Lovett. Green, supra, 318 N.J. Super. at 349. The defendant's appearance closely matched the description of the fugitive described in the warrant and just before the arrest, the defendant was standing directly in front of the residence where the fugitive reportedly resided. Ibid. When the investigators identified themselves, the defendant fled into the home, where he was pursued and arrested. Ibid. Once at the police station, the investigators learned that defendant was not the fugitive. Ibid. The defendant moved to suppress drugs he discarded while fleeing from the investigators. Finding striking similarities between the defendant's appearance and that of Lovett, as well as considering the defendant's conduct when the investigators identified themselves, the court found that the investigators

acted reasonably and denied defendant's motion.  On appeal, we agreed and affirmed.  Id. at 349-50.

In contrast, Trooper Moore knew only that somebody or two men had left the premises and they were walking towards a grey Pontiac.  He was not told these persons had fled the premises with evidence sought in the search warrant.  Bailey, supra, ___ U.S. at ___, 133 S. Ct. at 1042, 185 L. Ed. 2d at 33.  Nor did the two men act suspiciously or nervously when the trooper approached the grey Pontiac.  Carlino, supra, 373 N.J. Super. at 383.  Under these circumstances Trooper Moore's conduct was not objectively reasonable justifying defendant's seizure and the subsequent search.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1577-12T2