SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Chad Bivins** (A-23-14) (074374)

**Argued October 13, 2015 -- Decided April 20, 2016**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a warrant -- authorizing the search of a residence suspected to be involved in drug-trafficking activity and "all persons present" -- supported the off-premises search of two individuals found in a car several houses down the street from the target residence.

On March 29, 2011, State Police officers planned to execute a no-knock search warrant at 1256 Park Boulevard in Camden. The warrant permitted the police to search the residence for drugs and related contraband as well as "all persons present reasonably believed to be connected to said property and investigation." The affidavit submitted in support of the search warrant stated that the target location was known to be "open for the sale of narcotics twenty-four (24) hours a day, seven (7) days a week," and described the process by which an individual would obtain drugs from the people in the house. According to State Trooper Matthew Moore, a six-year member of the State Police, the authorities were aware that people were moving "in and out of the house at all times," and that there could have been "a lot more occupants in there than what [the officers] had seen." Therefore, precautions were taken in the event there were many people to secure and search once the warrant's execution began.

Trooper Moore testified that, "almost immediately" after being told that "entry was being made" into the residence, he received another communication from an officer at the scene telling him that "[t]wo guys were leaving the residence" and were "approaching" a grey Pontiac. As Moore drove up to his designated location, he observed a grey Pontiac about five or six houses down the street from 1256 Park Boulevard. The vehicle was located on the same block as the target residence and on the same side of the street. As Trooper Moore approached the grey Pontiac, he saw two individuals seated in the car, later identified as defendant and his cousin. Trooper Moore did not personally see defendant or his cousin leave 1256 Park Boulevard and enter the grey Pontiac. Moore and his partner removed the men from the vehicle, searched them, and found thirty-five bags of cocaine on each of them.

Defendant was indicted for various drug offenses, and later filed a motion to suppress. Moore was the State's only witness at the suppression hearing. Defendant also testified, offering a different description of the events. Defendant stated that he had driven to Camden to pick up his girlfriend, and that he and his cousin were pulled from their car and arrested within two to five minutes of arriving at that location. Defendant denied having any cocaine in his possession, but admitted to carrying $220 in cash. After hearing testimony from Trooper Moore and defendant, the court denied the suppression motion. Notwithstanding that Trooper Moore could not testify to seeing defendant leave the house, run to the Pontiac, and enter that vehicle, the court concluded that the search was lawfully conducted pursuant to a warrant because "[m]ost individuals would believe it's more probable than not" that defendant and his cousin were the same individuals that were reported as being the persons that "were inside the house moments before." Defendant pleaded guilty to third-degree possession of cocaine with the intent to distribute within 1,000 feet of a school, N.J.S.A. 2C:35-7, and was sentenced to three years of probation.

The Appellate Division reversed the trial court's denial of defendant's suppression motion. 435 N.J. Super. 519, 532 (App. Div. 2014). The panel relied on the United States Supreme Court's recent decision in Bailey v. United States, 133 S. Ct. 1031 (2013), in which the Court limited the right to detain individuals, in connection with the search of a residence, to those persons in the immediate vicinity of the place to be searched. The panel concluded that the probable cause for the warrant to search the premises here could not support the search of defendant because the search did not take place in the "immediate vicinity" as described in Bailey. The panel also identified no independent basis upon which defendant's search and seizure could rest, and rejected the argument that Trooper Moore had acted in an objectively reasonable manner.

The Court granted the State's petition for certification. 220 N.J. 98 (2014).

**HELD**: Because the State did not provide adequate proof that the individuals found in a car had been present at the targeted residence when the warrant was being executed moments before their apprehension, the warrant did not provide authority for the search of the two off-premises individuals.

1. Defendant challenges a search that was commenced by a warrant permitting the police to search for drugs and related contraband at 1256 Park Boulevard, as well as "all persons present reasonably believed to be connected to [the] property." The type of warrant involved in this matter was first approved in State v. De Simone, 60 N.J. 319 (1972). The De Simone decision explained that the validity of a particular all-persons-present warrant appropriately turns on whether "there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant [in the criminal operation]." Id. at 322. The Court held in De Simone that, "with regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the on-going criminal event itself." Ibid. Most courts across the country that have considered a particularity challenge to an all-persons-present search warrant have tracked the compelling rationale for authorizing use of such warrants expressed in De Simone. (pp. 14-15)

2. Defendant claims that the search of his person -- merely because he was sitting in a grey Pontiac located houses away from the property to be searched -- was beyond the scope of the search warrant issued for 1256 Park Boulevard. Because he was not found and searched on the premises that were the focus of the warrant, he claims his search could not possibly have been based on the warrant. That argument proves too much. Nevertheless, the search cannot be sustained. The State did not provide an adequate evidential basis linking defendant's presence to the location for which the all-persons-present search warrant was issued. Accordingly, this must be viewed as a warrantless search that lacked probable cause to support the search of defendant when he was found in the parked car. (p. 16)

3. The language of the search warrant bestowed on the executing officers the authority to search all individuals who were present at the residence covered by the all-persons-present warrant. Practically viewed, that must also authorize searches of persons seen departing from the scene of the search, provided that their presence at the scene when the warrant is being executed is proven. The scope of the warrant -- covering searches of persons found at the location of the criminal activity -- is not limited to the property's curb or side border. However, there is a hole in the factual narrative linking defendant to 1256 Park Boulevard: neither the communicating officer nor Trooper Moore could present any evidentiary support indicating that defendant and his cousin were the same two men that reportedly were departing the target residence. Because defendant's presence at 1256 Park Boulevard was not established, the search of his person fell outside the reach of the all-persons-present warrant. Had the State provided the necessary factual link to support that defendant had left the premises as the search was unfolding and was found, shortly thereafter, not far afield in the grey Pontiac, a different result could be supportable based on a reasonable execution of the all-persons-present warrant. (pp. 16-19)

4. The Court parts company with the Appellate Division to the extent that the panel relied on Bailey, supra, 133 S. Ct. 1031. Bailey discusses the limited authority to detain an occupant of a premises for which officers had a search warrant; the case does not circumscribe the authority of officers to search individuals when the executing officers possess an all-persons-present warrant. Based on the language of the search warrant here, officers were authorized to search individuals present at the residence, and that could encompass persons fleeing from the execution of the warrant, provided that their presence at the warrant's focused location was proven. As already noted, that connection was not proven, but the outcome of this matter is not and should not be viewed as rooted in Bailey. The Court's analysis is constructed from the foundation that De Simone established. (pp. 19-21)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

CHAD BIVINS,

    Defendant-Respondent.


> Argued October 13, 2015 – Decided April 20, 2016
>
> On certification to the Superior Court, Appellate Division, whose opinion is reported at 435 N.J. Super. 519 (App. Div. 2014).
>
> Jane C. Schuster, Deputy Attorney General, argued the cause for appellant (John J. Hoffman, Acting Attorney General of New Jersey, attorney).
>
> Lauren S. Michaels, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).
>
> Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (Edward L. Barocas, Legal Director, attorney).


    JUSTICE LaVECCHIA delivered the opinion of the Court.

    In this appeal, we are called on to determine whether a warrant -- authorizing the search of a residence suspected to be involved in drug-trafficking activity and "all persons present"

1

-- supported the off-premises search of two individuals found in a car several houses down the street from the target residence. Because the State did not provide adequate proof that those individuals had been present at the targeted residence when the warrant was being executed moments before their apprehension, we conclude that the warrant did not provide authority for the search of the two off-premises individuals.

I.

The following facts are derived from the hearing on the suppression motion filed by defendant, Chad Bivins, one of the two men searched.

On March 29, 2011, State Police officers planned to execute a no-knock search warrant at 1256 Park Boulevard in Camden sometime between 11:00 p.m. and midnight. The warrant permitted the police to search the residence for drugs and related contraband as well as "all persons present reasonably believed to be connected to said property and investigation." The affidavit submitted in support of the search warrant stated that the target location was known to be "open for the sale of narcotics twenty-four (24) hours a day, seven (7) days a week," and described the process by which an individual would obtain drugs from the people in the house. The affidavit also contained information that a confidential informant had observed two men with weapons inside 1256 Park Boulevard when purchasing

2

narcotics at the residence.  According to the affidavit, one man, who was near the back door of the house when the confidential informant went to purchase drugs, was observed to have an "Uzi" style weapon in his hand; another man, from whom the informant obtained the drugs, had an "AK-47" style rifle next to his chair.

On the night that the search warrant was to be executed, officers planned to enter the house through its back door. State Trooper Matthew Moore, a six-year member of the State Police, and his partner were designated to provide security near the front of the house to ensure that no one entered or exited the residence during the search.  According to Trooper Moore's testimony at the suppression hearing, the State Police were aware that people were moving "in and out of the house at all times," and that there could have been "a lot more occupants in there than what [the officers] had seen."  Therefore, precautions were being taken in the event there were many people to secure and search once the warrant's execution began.  Other officers were positioned around the house to participate in executing the warrant.

Trooper Moore testified that, prior to the search, he was in a car six or seven blocks from 1256 Park Boulevard. According to his instructions, once the search began, he was to move to his assigned post, which was a location about "five or

3

six houses away" from 1256 Park Boulevard.  Trooper Moore was responsible for securing the street corner of Park Boulevard and Princess Avenue while the search warrant was being executed and for monitoring activity at the home's front door.

When Trooper Moore and his partner received the call that the warrant's execution had begun, they drove to the corner of Park Boulevard and Princess Avenue.  Moore testified that, "almost immediately" after being told that "entry was being made" into the residence, he received another communication via radio or cell phone from a fellow officer at the scene telling him that "[t]wo guys were leaving the residence" and were "approaching" a grey Pontiac.[1]  The officer who made the call did not testify and was not identified.

As Trooper Moore pulled up to his designated location, he observed a grey Pontiac about five or six houses down the street from 1256 Park Boulevard.  The vehicle was located on the same block as the target residence and on the same side of the street.  As Trooper Moore approached the grey Pontiac, he saw two individuals seated in the car, later identified as defendant

---

[1] At various points in his testimony, Trooper Moore referred to being told "two guys" were, or "somebody" was, leaving the residence.  This discrepancy was not resolved as the unidentified communicating officer never testified at the suppression hearing.

4

and his cousin, Saiyd[2] Jordan. Trooper Moore and his partner removed defendant and Jordan from the vehicle, searched them, and found thirty-five bags of cocaine on each of them. According to Trooper Moore's testimony, he did not personally see defendant or Jordan leave 1256 Park Boulevard and enter the grey Pontiac. Moore was the State's only witness at the suppression hearing.

Defendant also testified at the suppression hearing, offering a different description of the events on March 29, 2011. Defendant stated that on that day he and his cousin drove from Philadelphia to Camden to pick up defendant's girlfriend, and that he parked his vehicle on Park Boulevard, near where his girlfriend lived and waited for her. Within two to five minutes of arriving at that location, he and his cousin were pulled from their car and arrested. According to defendant, the officers then brought him and his cousin to a house that he had never been to before. Defendant denied having any cocaine in his possession that evening, but he admitted to carrying $220 in cash on him.

Defendant was indicted for third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); third-degree possession of

---

[2] The Appellate Division referred to co-defendant as Sayid Jordan; however, we are spelling co-defendant's name as it appears in the indictment.

cocaine with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3); third-degree possession of cocaine with the intent to distribute within 1,000 feet of a school, N.J.S.A. 2C:35-7; second-degree possession of cocaine with the intent to distribute within 500 feet of a public housing facility, park, or building, N.J.S.A. 2C:35-7.1 and 2C:35-5(a)(1); and third-degree conspiracy to possess cocaine with the intent to distribute, N.J.S.A. 2C:5-2, 2C:35-5(a)(1), and 2C:35-5(b)(3).

In the pretrial proceeding conducted on defendant's motion to suppress, the motion court determined that defendant had to prove that the search of his person was unconstitutional "because there was a Search Warrant . . . and most important, because the State's theory is, is that the search was pursuant to the explicit authority in that Warrant." Accordingly, the court placed on defendant "the initial burden of production . . . not persuasion, of producing some evidence" to show that the search fell "outside of the parameters of the Warrant." If defendant met that burden, according to the court, then the "burden of persuasion [would] shift[] to the State."

After hearing testimony from Trooper Moore and defendant, but before making its determination, the court addressed credibility. The court found Trooper Moore "highly credible." As for defendant, the court stated:

6

> [W]hile [defendant] made a good witness, he lost me when he indicated he had no cocaine on him at all, he denied he had the thirty-five packets of cocaine, he denied he had any of the cash.[3]  So while I was with him to some extent when he said that he was texting his girlfriend and he had no involvement in it, and the lack of the State's evidence with eyewitness testimony connecting him specifically from the house to the vehicle, remember there's only hearsay that connects [defendant] from the house to the vehicle, he lost me when he testified he had no cocaine on him.
>
> The court does not believe that the State Police would simply lie about cocaine being on people.

In its analysis, the court explained that if the search fell under the purview of the search warrant, then it was lawful; however, if the search fell outside of the warrant's scope, then the search was unlawful because the State failed to present any independent basis to justify the search.  The court reasoned that, when broken down into its "simplest parts," the case consists of "an allegation that two people ran from the scene of a house where allegedly there was criminal activity, . . . they ran to a specified car, a grey Pontiac, [and] moments later two individuals were found inside the grey Pontiac."  Notwithstanding that Trooper Moore could not testify to seeing defendant leave the house, run to the Pontiac, and enter that

---

[3] Contrary to this finding, defendant admitted that he had $220 on his person at the time of his arrest.

vehicle, the court concluded that the search was lawfully conducted pursuant to a warrant because "[m]ost individuals would believe it's more probable than not" that defendant and his cousin were the same individuals that were reported to Trooper Moore in the second call as being the persons that "were inside the house moments before."  Thus, the court denied the suppression motion.

Defendant thereafter pleaded guilty to third-degree possession of cocaine with the intent to distribute within 1,000 feet of a school, N.J.S.A. 2C:35-7.  He was sentenced to three years of probation.

The Appellate Division reversed the trial court's denial of defendant's suppression motion.  State v. Bivins, 435 N.J. Super. 519, 532 (App. Div. 2014).  The panel framed the issue as "whether the scope of the permissible area and persons to be searched, pursuant to a search warrant, extends to the location where defendant . . . [was] found, seated in a Pontiac, parked five or six houses away from the premises where a search warrant was being executed."  Id. at 521-22.  In resolving that issue, the panel relied on the United States Supreme Court's recent decision in Bailey v. United States, __ U.S. __, 133 S. Ct. 1031, 185 L. Ed. 2d 19 (2013), in which the Court limited the right to detain individuals, in connection with the search of a residence, to those persons in the immediate vicinity of the

8

place to be searched.  Id. at 522.  The panel concluded that the probable cause for the warrant to search the premises here could not support the search of defendant because the search did not take place in the "immediate vicinity" as described in Bailey. Id. at 529.

In support of its decision, the panel noted that Trooper Moore did not personally observe the two men leaving the target residence or entering the grey Pontiac; rather, he simply found defendant and Jordan sitting in the Pontiac, which was parked five or six houses away from the target residence.  Id. at 528. Additionally, the panel emphasized that all parties agreed that the affidavit in support of the search warrant did not specifically identify defendant, Jordan, or the grey Pontiac. Ibid.  And, although the panel acknowledged that "defendant was in closer proximity to the residence being searched than the petitioner in Bailey, who was one mile away from the scene of the search, he was spatially still 'beyond the immediate vicinity of the premises to be searched.'"  Ibid. (quoting Bailey, supra, __ U.S. at __, 133 S. Ct. at 1041, 185 L. Ed. 2d at 32).

Moreover, the panel identified no independent basis upon which defendant's search and seizure could rest.  Id. at 530-31. The officers did not observe defendant engaging in any suspicious, let alone illegal, activity.  Ibid.  The panel

9

further noted that "there is no indication that either defendant or Jordan were aware the premises were being searched." Id. at 530.

Finally, the panel rejected the argument that Trooper Moore had acted in an objectively reasonable manner. Id. at 531. According to the panel, the information conveyed to Trooper Moore -- that two men were leaving the target residence and approaching a Pontiac -- was insufficient to demonstrate "whether the person(s) seen approaching the grey Pontiac actually entered it." Id. at 528. The panel concluded that, given the information that Trooper Moore had received, "it may have been reasonable to detain defendant, but it was not objectively reasonable to seize him and conduct the full search that followed." Id. at 531-32.

Based on those reasons, the panel reversed the denial of defendant's suppression motion. Id. at 532. We granted the State's petition for certification. State v. Bivins, 220 N.J. 98 (2014). We also granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU-NJ).

                              II.

The State argues that the Appellate Division's application of Bailey was in error because here the search warrant authorized not just the search of premises but also the search of "all persons present reasonably believed to be connected to

                              10

said property and investigation." The State contends that "the same probable-cause finding that justified a search of the 'two guys' at the property did not dissipate merely because they were beyond the curtilage of the property." To hold otherwise, the State maintains, would encourage flight: if the subjects of a warrant can only manage to get beyond the property's curb line before being apprehended, then they earn the windfall of suppression.

Defendant emphasizes that the terms of the warrant permitted a search only of those present at 1256 Park. An off-premises search, according to defendant, especially one based on only a vague notion connecting the occupants of a nearby car with the premises, reaches "far beyond both the language of the warrant itself, and the justification underlying the authorization to search unnamed individuals based on their presence." Moreover, defendant contends that the trial court erred by placing a burden on defendant in the suppression hearing, forcing him to prove a negative. Last, defendant challenges the sufficiency of the trial court's factual finding that defendant was present at 1256 Park when police began executing the warrant. Because there was no testimony that identified defendant as the person leaving the house, defendant argues that the trial court's finding lacked substantial credible evidence.

11

The ACLU-NJ emphasizes that the State should bear the burden of proof and production when challenging a search that occurs outside of the location specified in a search warrant. The ACLU-NJ also bolsters the arguments of defendant, contending that there was no probable cause to believe that defendant had been at the location described in the warrant because (1) there was no description of the people leaving the house that would have indicated that defendant and Jordan resembled the unidentified individuals, and (2) evidence that someone is "approaching" a vehicle does not mean that the person actually entered it.

III.

A.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution offer protection against "unreasonable searches and seizures" carried out by government officials. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "[O]ur constitutional jurisprudence expresses a preference that . . . officials secure warrants issued by neutral and detached magistrates before executing a search, particularly of a home." State v. Frankel, 179 N.J. 586, 597-98 (citations omitted), cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004), overruled in part by State v. Edmonds, 211 N.J. 117, 131-32 (2012). Fundamental to both the federal

12

and state right is the idea that "[a] search conducted without a warrant is presumptively invalid." Id. at 598. Thus, the State has the burden of showing that one of the "judicially cognizable exception[s] to the warrant requirement" applies to the warrantless search. State v. Valencia, 93 N.J. 126, 133 (1983); see also State v. Brown, 132 N.J. Super. 180, 185 (App. Div. 1975) ("It is well settled that in warrantless search cases the ultimate burden of proof rests upon the State to justify the propriety of its actions.").

Conversely, when a search is based on a warrant, the search is presumptively valid. Valencia, supra, 93 N.J. at 133. When contesting the search at a suppression hearing, the defendant must prove that the warrant was based on insufficient probable cause to justify its issuance or that the execution of the search was unreasonable. Ibid. "When a search or seizure is made pursuant to a warrant, the probable cause determination must be made based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Schneider v. Simonini, 163 N.J. 336, 363 (2000) (citations omitted), cert. denied, 531 U.S. 1146, 121 S. Ct. 1083, 148 L. Ed. 2d 959 (2001). A particularity requirement governs the scope of search warrants, mandating that the warrant specifically describe the search location so that an officer can

13

reasonably "ascertain and identify the place intended" to be searched, as authorized by the magistrate's probable cause finding.  State v. Marshall, 199 N.J. 602, 611 (2009) (quoting Steele v. United States, 267 U.S. 498, 503, 45 S. Ct. 414, 416, 69 L. Ed. 757, 760 (1925)).

B.

Defendant challenges a search that was commenced by a warrant permitting the police to search for drugs and related contraband at 1256 Park Boulevard, as well as "all persons present reasonably believed to be connected to [the] property."

State v. De Simone, 60 N.J. 319 (1972), first approved of the type of warrant involved in this matter.  Chief Justice Weintraub, the author of De Simone, dissected the argument that all-persons-present warrants should be universally condemned as blanket or general warrants because such warrants authorize the search of an indeterminate number of people without naming persons specifically.  Id. at 321.  The De Simone decision explained that the validity of a particular all-persons-present warrant appropriately turns on whether "there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant [in the criminal operation]."  Id. at 322.

> On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend

14

> upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense.
>
> [Id. at 321-22.]

Thus, the location "furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them." Id. at 322. The Court held in De Simone that, "with regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is thus identified by physical nexus to the on-going criminal event itself." Ibid.

Most courts across the country that have considered a particularity challenge to an all-persons-present search warrant have tracked the compelling rationale for authorizing use of such warrants expressed in De Simone. See Wayne R. LeFave, Search and Seizure: A Treatise on the Fourth Amendment, §4.5(e) (5th ed. 2012) ("Most of the decisions either upholding or striking down particular warrants of the De[]Simone variety

15

conform, at least in terms of the result reached, to the analysis of that case.").

IV.

A.

In this matter, defendant claims that the search of his person -- merely because he was sitting in a grey Pontiac located houses away from the property to be searched -- was beyond the scope of the search warrant issued for 1256 Park Boulevard.  Because he was not found and searched on the premises that were the focus of the warrant, he claims his search could not possibly have been based on the warrant.  That argument proves too much.  Nevertheless, we agree with the Appellate Division that this search cannot be sustained.  We conclude that the State did not provide an adequate evidential basis linking defendant's presence to the location for which the all-persons-present search warrant was issued.  Accordingly, this must be viewed as a warrantless search that lacked probable cause to support the search of defendant when he was found in the parked car.

To begin, the language of the search warrant bestowed on the executing officers the authority to search all individuals who were present at the residence covered by the all-persons-present warrant.  Practically viewed, that must also authorize searches of persons seen departing from the scene of the search,

16

provided that their presence at the scene when the warrant is being executed is proven.  The particularity requirement for such warrants depends on presence at a location where criminal activity is reasonably believed to involve all persons present. See De Simone, supra, 60 N.J. at 321-22.  The scope of the warrant -- covering searches of persons found at the location of the criminal activity -- is not limited to the property's curb or side border.  However, there is a hole in the factual narrative linking defendant to 1256 Park Boulevard, a gap that proves fatal to the State's argument that it had the right under the all-persons-present warrant to search defendant.

Trooper Moore received a communication from another officer who was executing the search warrant at 1256 Park Boulevard that two men were leaving the house and approaching a grey Pontiac. But the communicating officer did not testify at the suppression hearing, and nothing in the record indicates that the communicating officer actually saw the two men enter the Pontiac.  By the time Trooper Moore arrived at his designated post in the vicinity of the premises to be searched, defendant and his cousin were seated inside a grey Pontiac.  However, Trooper Moore did not see them leave 1256 Park Boulevard and enter the Pontiac.  Moore -- the lone testifying officer at the suppression hearing -- could not provide the evidential links necessary to support the conclusion that defendant and his

cousin, seated in the car, had been among the persons present in the premises authorized to be searched. That gap in observation cannot be overcome by an inference that these two men "must have been" the two men who, according to the communicating officer radioing Trooper Moore, were leaving by the front door of the residence as the search began. The gap leaves open the reasonable possibility that defendant may not have been a person present at the property subject to the search warrant authorized for 1256 Park Boulevard.

Our decision focuses, as it must, on the evidence presented at the suppression hearing. Had the communicating officer seen the two men leave the target residence and enter the grey Pontiac, his statement to that effect to Trooper Moore, although hearsay, would have been admissible through Moore's testimony at the suppression hearing. Indeed, "hearsay is permissible in suppression hearings, subject to N.J.R.E. 104(a)." State v. Watts, 223 N.J. 503, 519 n.4 (2015); see also State v. Gibson, 429 N.J. Super. 456, 466 (App. Div. 2013) (stating that suppression hearing "may include evidence inadmissible in the trial on the merits," and that "[t]he Rules of Evidence do not apply in the suppression hearing, except as to N.J.R.E. 403 and claims of privilege" (citing N.J.R.E. 104(a))), rev'd on other grounds, 219 N.J. 227 (2014). However, a key evidential link is missing in this case: neither the communicating officer nor

18

Trooper Moore could present any evidentiary support indicating that defendant and Jordan were the same two men that reportedly were departing the target residence.

Because defendant's presence at 1256 Park Boulevard was not established, we hold that the search of his person fell outside the reach of the all-persons-present warrant. See De Simone, supra, 60 N.J. at 322. A different holding would be contrary to De Simone's principles. We will not stretch De Simone's careful support for satisfaction of the particularity requirement to "fix" the evidential problem created by the inadequate record in this case. This defendant simply was not sufficiently tied to the location that provided probable cause for a search based on the warrant. Importantly, our holding is not based on the mere fact that the search took place off of, but not far from, the property covered by the warrant. Had the State provided the necessary factual link to support that defendant had left the premises as the search was unfolding and was found, shortly thereafter, not far afield in the grey Pontiac, a different result could be supportable based on a reasonable execution of the all-persons-present warrant.

## B.

We part company with the Appellate Division to the extent that it relied on Bailey, supra, __ U.S. __, 133 S. Ct. 1031, 185 L. Ed. 2d 19.

19

In Bailey, police officers obtained a warrant to search a residence for a handgun and used that search warrant as a basis for justifying the detention and pat-down search of two men who were observed leaving the target residence, but who were not stopped and searched until they were about one mile away. Id. at __, 133 S. Ct. at 1036, 185 L. Ed. 2d at 26-27. The United States Supreme Court held that, although Michigan v. Summers, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981), permits officers to detain occupants of a residence during the execution of a search warrant for the premises, even absent individualized suspicion, that rule was necessarily circumscribed by a "spatial constraint" to the premises to be searched. Bailey, supra, __ U.S. at __, 133 S. Ct. at 1041-42, 185 L. Ed. 2d at 33. As the Court explained, "[o]nce an individual has left the immediate vicinity of a premises to be searched, . . . detentions must be justified by some other rationale." Id. at __, 133 S. Ct. at 1043, 185 L. Ed. 2d at 34.

In the present matter, the Appellate Division utilized Bailey's rationale when analyzing the search of defendant. In applying Bailey to the facts of this case, the panel determined that defendant and his co-defendant, who were searched when they were approximately six houses away from the residence where the search warrant was being executed, were beyond the spatial constraint of the "immediate vicinity of the premises." Bivins,

supra, 435 N.J. Super. at 528 (citation omitted). We disapprove of the part of the panel's reasoning that relies on Bailey because it is an inapt fit for the present matter.

The search warrant in Bailey contained no language permitting officers to search anyone present at the residence; thus, the officers were able to detain an individual at the residence only for the purposes of protecting officer safety, facilitating the completion of the search, and preventing flight. See Bailey, supra, __ U.S. at __, 133 S. Ct. at 1038, 185 L. Ed. 2d at 29. Bailey discusses the limited authority to detain an occupant of a premises for which officers had a search warrant; the case does not circumscribe the authority of officers to search individuals when the executing officers possess an all-persons-present warrant. Based on the language of the search warrant here, officers were authorized to search individuals present at the residence, and that could encompass persons fleeing from the execution of the warrant, provided that their presence at the warrant's focused location was proven. As already noted, that connection was not proven, but the outcome of this matter is not and should not be viewed as rooted in Bailey.

V.

In sum, our analysis is constructed from the foundation that De Simone established. With De Simone as our guide, we conclude

21

that the State did not demonstrate that the all-persons-present search warrant for 1256 Park Boulevard covered the search of defendant, who was found several houses away seated in a parked car. The proofs did not provide the factual links necessary to demonstrate that defendant had been present at the unfolding scene of the warrant's execution, which could have made him subject to search under the all-persons-present warrant. The inferences relied on to supply missing links in the narrative do not satisfy the particularity requirement in this setting. The judgment of the Appellate Division is affirmed.


CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUSTICE FERNANDEZ-VINA did not participate.

22

SUPREME COURT OF NEW JERSEY

NO.    A-23                         SEPTEMBER TERM 2014

ON CERTIFICATION TO _____ Appellate Division, Superior Court _____


STATE OF NEW JERSEY,

        Plaintiff-Appellant,

                v.

CHAD BIVINS,

        Defendant-Respondent.



DECIDED          April 20, 2016 _____
                Chief Justice Rabner                    PRESIDING
_____
OPINION BY       Justice LaVecchia _____
CONCURRING/DISSENTING OPINIONS BY   _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRMED | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |