STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. GUILLER-
MO LEON VALENCIA, FRANCISCO GOMEZ AND ARTURO
GOMEZ, DEFENDANTS-RESPONDENTS, AND GUILLERMO
LEON HERRARA, DEFENDANT.

Argued November 9, 1982—Decided May 16, 1983.

130

*Phillip L. Halpern,* Assistant Prosecutor, argued the cause for appellant (*Charles R. Buckley,* Acting Hudson County Prosecutor, attorney).

*Ralph J. Lamparello* argued the cause for respondents (*Olivieri & Lamparello* and *Vincent J. D'Elia,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This case requires the Court to determine the validity of a search that was judicially authorized over the telephone.

On May 15, 1980 Detective James Scales of the Jersey City Police Department, while conducting surveillance at 401 Summit Avenue, Jersey City, observed defendant Guillermo Valencia enter the apartment building and proceed up the stairs and out of sight. About 10 minutes later, Valencia emerged from the building, looked up and down the street, pulled a plastic bag containing a white powder out of his pocket and placed the bag in an envelope. Detective Scales, suspecting that the bag contained a controlled dangerous substance, followed Valencia for a few blocks and then arrested him. Scales seized the plastic bag. He then relayed this information to the surveillance coordinator, Detective Richard Vogel. Detective Vogel proceeded to his office and drew up an affidavit in support of a search warrant. The affidavit stated that an informant had told police that large quantities of illegal narcotics were being stored in and sold from Apartment 34 at 401 Summit Avenue. Further, the affidavit

stated that the police had observed frequent visitors who stayed at the apartment building for brief periods of time. The affidavit also described Detective Scales' observations and actions, including Valencia's arrest.

By this time it was almost midnight on the night of May 15 and finding a judge at that hour proved difficult. With the assistance of the Hudson County Police Department, Detective Vogel was able to reach by telephone a Superior Court judge at his home at the New Jersey shore. In this telephone conversation the detective told the judge that he would like to make an application for a warrant; he then read the judge his affidavit. The affidavit had not been sworn to or notarized nor were its contents formally affirmed by the detective. Just past midnight, the judge orally authorized a search. Later that day, after the execution of the search, the officers appeared at the judge's home where a formal oath was administered, the contents of the affidavit were sworn to and the judge signed a written search warrant.

Based upon the telephone authorization, a search of Apartment 34 at 401 Summit Avenue was conducted, producing evidence leading to the indictment of defendant Valencia and several other individuals for possession of cocaine, possession with intent to distribute and illegal possession of a pen gun. Motions to suppress this evidence were brought before the trial judge who found the search authorized by telephone defective because the application of the detective was not supported by an oath or affirmation. The judge granted the motions to suppress, except with regard to the small amount of cocaine taken from the person of defendant Valencia by Detective Vogel. The Appellate Division affirmed. We granted the State's motion for leave to appeal. 93 *N.J.* 126 (1982).

I

This Court has not previously considered the validity of a search authorized by a judge over the telephone. The threshold

question is whether such a search can be regarded as a search pursuant to a warrant under our rules or, alternatively, whether it must be regarded as a form of warrantless search. Important substantive implications and procedural consequences flow from this determination.

A search based upon a warrant is presumed to be valid once the State establishes that the search warrant was issued in accordance with the procedures prescribed by the rules governing search warrants. The burden of demonstrating the invalidity of such a search is placed upon the defendant. The defendant must establish that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable. *See State v. Kasabucki,* 52 *N.J.* 110 (1968).

In contrast, a warrantless search is presumed to be invalid. Hence, the State must prove the overall reasonableness and validity of the search. The State must demonstrate that failure to secure a written warrant was justified, namely, that the search falls within a judicially cognizable exception to the warrant requirement. It must also show the existence of probable cause to search. *State v. Young,* 87 *N.J.* 132, 141–42 (1982); *State v. Patino,* 83 *N.J.* 1, 7 (1980); *State v. Ercolano,* 79 *N.J.* 25, 42 (1979); *State v. Sims,* 75 *N.J.* 337, 352 (1978).

Our court rules define what constitutes a search warrant and the procedures that must be followed to obtain one. *R.* 3:5–3 provides:

> An applicant for a search warrant shall appear personally before the judge who must take his affidavit or testimony before issuing the warrant. The judge may also examine, under oath, any witness the applicant produces, and may in his discretion require that any person upon whose information the applicant relies appear personally and be examined under oath concerning such information. If the judge is satisfied that grounds for granting the application exist or that there is probable cause to believe they exist, he shall date and issue the warrant identifying the property to be seized, naming or describing the person or place to be searched and specifying the hours when it may be executed. The warrant shall be directed to any law enforcement officer, without naming him, and it shall state the basis for its issuance and the names of the persons whose

> affidavits or testimony have been taken in support thereof. The warrant shall direct that it be returned to the judge who issued it.

The rule itself does not provide for telephonic warrants.[1]

The State's basic argument in this case is that a telephonically authorized search is the functional equivalent of a search conducted with a written warrant. While the State concedes that the literal specifications of *R.* 3:5–3 have not been met in a case where a "warrant" to search is given over the telephone, it argues that any deviations from the rules constitute mere "technical insufficiencies or irregularities" that do not serve to invalidate the search. *R.* 3:5–7(g).

■ Courts in this State consistently have maintained that strict adherence to the protective rules governing search warrants is an integral part of the constitutional armory safeguarding citizens from unreasonable searches and seizures. *State v. Fariello,* 71 *N.J.* 552 (1978); *see also State v. Pointer,* 135 *N.J.Super.* 472 (App.Div.), certif. den., 69 *N.J.* 79 (1975); *State v. Bisaccia,* 131 *N.J.Super.* 270 (App.Div.1974); *State v. Stolzman,* 115 *N.J.Super.* 231 (App.Div.1971). Noncompliance with the rules can be tolerated only if it is insubstantial. Thus, as long as the objectives underlying the procedural requirements that govern the application, issuance, execution, filing and return of the search warrants are not fundamentally compromised, a slight departure from strict compliance with the rules will not invalidate the search. *E.g., State v. Bisaccia,* 58 *N.J.* 586 (1971); *State v. Daniels,* 46 *N.J.* 428 (1966).

■ A primary objective of our rules governing search warrants is to enhance the soundness and integrity of the judicial decisional process entailed in their issuance. *R.* 3:5–3 contemplates that an application for a search warrant will furnish the issuing judge with credible and reliable evidence of probable

---

[1]*Compare* F.R.Crim.P. 41(c)(2); Cal.Penal Code §§ 1526(b), 1528(b) (West 1982); Ariz.Rev.Stat.Ann. §§ 13–3914, 13–3915 (1982) (explicitly providing for issuance of warrants pursuant to telephone applications).

cause. It clearly and unequivocally demands that the officer seeking the warrant "shall appear personally before the [issuing] judge." Testimony in the judge's presence safeguards the individual's rights under Fourth Amendment and the State Constitution. The presence of the applicant, along with the testimony or affidavits of any witnesses, leads to a more thorough and deliberate examination of the factual basis for issuing the warrant. *See* Israel, "Legislative Regulation of Searches and Seizures: The Michigan Proposals," 73 *Mich.L.Rev.* 221 (1975); Comment, "Oral Search Warrants: A New Standard of Warrant Availability," 21 *U.C.L.A.L.Rev.* 691 (1973).

To encourage the presentation of trustworthy evidence, the rules impose several additional requirements. *R.* 3:5–3 directs that the applicant present evidence only by written affidavit or sworn testimony. *R.* 3:5–6 provides that where oral testimony is offered, a contemporaneous transcript or written summary must be made. *See State v. Fariello, supra* (stressing significance of contemporaneous recording of sworn oral testimony in support of search warrant). *R.* 3:5–3 also requires that the warrant of the judge shall be in written form and shall carefully specify the places and persons to be searched as well as the evidence that can be seized. Supplementing this requirement, *R.* 3:5–6 directs that the written warrant, as well as the application, shall be filed with the clerk of the court to protect the record concerning the issuance of the warrant.

In this case there are several obvious and major departures from the requirements of the search warrant rules. The applicant did not appear personally before the issuing judge. Further, as found on the motion to suppress, the testimony offered in support of the warrant was not duly sworn or given under oath. The notes of the issuing judge were not, arguably, a complete contemporaneous recordation of the oral application. Finally, the authorization itself was issued verbally. As a result, the subsequent written warrant cannot be reliably compared to any prior recordation to determine its fidelity to the contents of the original application and oral authorization.

■ We hold that these deviations from the rules governing search warrants in the aggregate constitute material noncompliance with the rules governing search warrants. The failure to meet these several requirements subverts the reliability of the decisional process; it undermines the proper discharge of the judiciary's responsibility and clouds the judge's role in authorizing the search. Under no circumstances can such a wholesale departure from the search warrant rule be fairly regarded as "technical insufficiencies or irregularities." *R.* 3:5–7(g). We conclude that since *R.* 3:5–3 is presently the sole determinant as to what constitutes a "search warrant," the telephonically authorized search must be viewed as a warrantless search.

## II

■ The question next posed is whether, and by what standards, a "warrantless" search that has been judicially authorized over the telephone can otherwise be sustained as a constitutionally reasonable search. To sustain a warrantless search, the State must ordinarily demonstrate that exigent circumstances prevented obtaining a written warrant and that probable cause for the search existed.

There is, however, a signal difference between a telephone-authorized search and virtually all other searches conducted without a written warrant. Unlike other warrantless searches, there has been some judicial participation in the case of a search that has been authorized over the telephone. A judge has made a determination based upon the information presented over the telephone that probable cause for a search exists. The judge also has had the opportunity to determine whether the circumstances excuse the failure to obtain a written warrant on a personal appearance.

■ In light of this judicial role, the State, when seeking to defend a telephone-authorized search, must make an evidential showing that is somewhat different from that imposed with respect to a warrantless search in which there has been no

judicial involvement whatsoever. We now hold that to sustain a telephone-authorized search, the State must still show the existence of probable cause to search. In addition, the State must demonstrate to the issuing judge that the failure to secure a written warrant is necessitated by "exigent circumstances."

We impose the requirement that exigent circumstances be shown because the telephone-authorized search should, analytically in that respect, be regarded as a warrantless search and, generally, a written warrant should be obtained whenever possible. *See State v. Liberti,* 161 *N.J.Super.* 575 (App.Div.1978), certif. den., 79 *N.J.* 502 (1979) (telephonic warrants can be issued only in the most compelling circumstances). The "exigent circumstances" exception aptly describes the necessity that the State must show in order to justify its use of the telephone, *viz:*

> The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant . . . ; (2) reasonable belief that the contraband is about to be removed .  ; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought . . . ; (4) information indicating the possessors of the contraband are aware that the police are on their trail . . . ; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of [the contraband] and to escape are characteristic behavior of persons engaged in [this type of crime]" *United States v. Manning,* 448 F.2d 992, 998–999 (2d Cir.1971); *United States v. Davis,* 461 F.2d [1026], at 1031–1032 [3 Cir.1972].
>
> [*United States v. Rubin,* 474 F.2d 262, 268–69 (3 Cir.1973) ]

We stress that in the case of a telephone-authorized search, the time constraints affecting the choice by the applying police officer between a telephone application and a written warrant application upon a personal appearance are relevant in the judicial assessment of exigency. *See, e.g., United States v. Cuaron,* 700 *F.2d* 582 (10 Cir.1983); *United States v. McEachin,* 670 *F.2d* 1139 (D.C.Cir.1981). *See generally* March, "Telephonic Search Warrants: A New Equation For Exigent Circumstances," 27 *Clev.St.L.Rev.* 35 (1978).

▮ Because the judiciary has a role in a telephone-authorized search, it is appropriate that, on a motion to suppress, evidential weight be given to the issuing judge's determinations of both exigent circumstances and probable cause. These determinations, however, should not automatically be entitled to the same deference given to the judicial determinations that underlie the grant of a written search warrant issued in conformity with the rules.

▮ We will permit deference to be accorded the determinations of the issuing judge in a telephone-authorized search only when the integrity and soundness of those determinations can be assured. Indeed, in the case of searches made pursuant to written warrants, the presumption of validity and reasonableness that attaches to such searches and the weight accorded to the determinations of the issuing judge, *e.g., State v. Kasabucki, supra,* derive from the integrity and soundness of the judiciary's participation. The procedures required by our court rules, *e.g., R.* 3:5–3, 3:5–6, serve to assure a high level of trustworthiness in the decisional process in the case of a written search warrant.

We believe that the procedures for written warrants furnish guidelines that can be adapted and applied to searches authorized over the telephone. Suitably molded, these procedural safeguards can, in our view, generate trustworthiness in the decisional process sufficient to justify deference to the issuing judge's telephonic determination as to the presence of exigent circumstances and probable cause.

▮ Adapting these standards to a telephone-authorized search, we now require the following procedural safeguards. The applicant-police officer must suitably identify himself; he must specify the purpose of the request. He must also disclose the basis for the information he intends to impart to the judge and must be placed under oath or affirmation by the judge before presenting any information. The judge shall also make a contemporaneous record of the application, either by tape or stenographic recording or by making adequate notes thereof.

The judge shall also make a contemporaneous record or notation of his factual determination as to exigent circumstances and probable cause. He shall also memorialize the specific terms of his authorization to search. Further, promptly after such authorization, the judge shall issue a written confirmatory search warrant and shall file that warrant together with all documents evidencing the oral application and authorization with the clerk of the court. Compliance with these safeguards will assure a reliable underpinning to the judicial decision authorizing a search rendered over the telephone.

To recapitulate, a search authorized by a judge over the telephone is, for analytical purposes, to be considered a form of warrantless search. Upon a motion to suppress the evidence from such a search, the burden will be upon the State to establish its validity. If the State demonstrates (1) that the issuing judge found both exigent circumstances to excuse the failure to obtain a written warrant and probable cause to conduct the search and (2) that all of the procedural safeguards that we have outlined to assure the underlying reliability of the judge's decision to authorize the search have been met, the telephone authorization to search will then be deemed to be the functional equivalent of a written warrant. The burden of demonstrating the invalidity of the search shall thereafter revert to the defendant, in which event the determination of the issuing judge as to the existence of both exigent circumstances and probable cause shall be accorded substantial deference. *See State v. Kasabucki, supra.*

### III

We turn to whether the search in this case was valid under these standards. Applying our framework of analysis, we initially consider whether the issuing judge made an independent determination that exigent circumstances justified a telephonic

application for authorization to search. In reviewing the record, we find that the issuing judge made no inquiry as to whether there were exigent circumstances sufficient to excuse the failure to obtain a written warrant. We also note that in its application over the telephone the State, at best, presented insufficient evidence relating to exigent circumstances.

In addition to the absence of the requisite determination of exigent circumstances, the notes made by the issuing judge to memorialize his conversation with Detective Vogel were inadequate. The judge's notes contain only the following information: (1) he received a telephone call at about midnight on May 15–16, 1980 at his home in Allenhurst; (2) the call came from Detective Richard Vogel of the Jersey City Police, who sought a search warrant for a Jersey City residence at a specified address; (3) the Jersey City police suspected a heroin operation at this address; and (4) that Detective Vogel read his typed affidavit to the judge. The contents of the affidavit are not described in the judge's notes.[2] The affidavit itself was apparently not presented to the judge until later that day. Thus, these notes do not furnish a reliable basis for ascertaining precisely what the judge considered or found in granting the warrant application.

[2] The contents of the affidavit are known because the affidavit itself was appended to the record on appeal to the Appellate Division. The trial court found that no oath was administered and the Appellate Division affirmed the invalidation of the search on that ground. The State argues that the issuing judge, before authorizing the search, asked Detective Vogel whether his statements were "true and correct to the best of his knowledge." However, the judge's notes on his conversation with Detective Vogel do not indicate that the detective stated anything about the truth of his information as given to the judge. The notes only stated that "Det. Vogel read his typed affidavit to me." The assertion that Detective Vogel had said that his information was "true and correct to the best of his knowledge" occurred later at the suppression hearing when the issuing judge testified that he had administered an oath to the detective. We need not resolve the sufficiency of the evidential record on this point.

We conclude that the State in this case has failed to carry the burden of proof necessary to prevail on a motion to suppress evidence obtained as a result of the telephone-authorized search. The State did not demonstrate that the trial judge found exigent circumstances justifying a telephonic application to search. Further, the State failed to show that the minimal procedural requirements to assure the reliability of the telephonically authorized search have been met. We therefore sustain the judgment below suppressing the evidence.[3]

## IV

The requirements now imposed to govern the validity of telephone-authorized searches are intended to assure the continued primacy currently accorded the written search warrant and confirm the importance of the written warrant in the preservation of the constitutional right against unreasonable searches and seizures. We acknowledge that these requirements may exceed minimal constitutional standards. However, we need more experience and information regarding the adequacy of procedures for securing over the telephone authority to search. The records in this case and the companion cases, *State v. Apostolis,* 93 *N.J.* 143 (1983), and *State v. Guerra,* 93 *N.J.* 146 (1983), do not sufficiently educate us on these matters. We recognize the complex and numerous policies associated with this aspect of criminal law enforcement. We think it ill-advised

---

[3]With respect to searches made upon telephone authorizations that have occurred prior to the date of this decision, we hold that if the sole basis for noncompliance with the new standards prescribed in this opinion is the failure of the issuing judge to make an independent determination of exigent circumstances, such failure alone will not constitute grounds for granting a defendant's motion to suppress provided that the State can otherwise prove the existence of exigent circumstances through direct evidence at the suppression hearing. *See, e.g. State v. Liberti,* 161 *N.J.Super.* 575 (App.Div. 1978), certif. den., 79 *N.J.* 502 (1979) (finding most compelling circumstances); *State v. Cymerman,* 135 *N.J.Super.* 591 (Law Div.1975) (issuing judge finding exigent circumstances to exist). In all other respects, we decline to determine the retroactive effect of our decision upon telephone-authorized searches conducted prior to today's decision.

therefore to establish a comprehensive rule through this decision.

Accordingly, we direct the Criminal Practice Committee of the Supreme Court to study the question of telephone search warrants to assist us in the adoption of appropriate rules governing the issuance of such warrants. We acknowledge the respectable authority that favors an expanded use of telephone warrants.[4] The sound policy of encouraging "law enforcement officers to seek search warrants in situations when they might otherwise conduct warrantless searches," *United States v. McEachin,* 670 *F.*2d 1139, 1147 (D.C.Cir.1981), argues for more lenient or flexible standards that would permit departures from the written warrant as the exclusive mode for judicial intercession in the search and seizure field. Nevertheless, we intend that no preference in approach be extrapolated from our discussion today. The consideration of a rule is best undertaken after a committee has carefully weighed and sifted the various governmental and societal policies surrounding such a delicate and potentially

---

[4]The federal rules provide that the issuing magistrate decide that the "circumstances were reasonable" to dispense with written affidavits and receive sworn testimony by telephone. F.R.Crim.P. 41(c)(2)(A). Although the magistrate's decision is nonreviewable, the federal rules demand strict compliance with the procedural safeguards embodied therein. *See, e.g., United States v. Shorter,* 600 *F.*2d 585 (6 Cir.1979) (holding that failure of magistrate to immediately administer oath to affiant invalidated search warrant). California's statutory scheme for the issuance of search warrants, Cal.Penal Code §§ 1526(b), 1528(b) (West 1982), unconditionally permits a magistrate to take oral testimony in lieu of a written affidavit, but requires that the statutory procedures be strictly followed. *See, e.g., Bowyer v. Superior Court of Santa Cruz County,* 37 *Cal.App.*3d 151, 111 *Cal.Rptr.* 628 (Cal.App.1974) (requiring that oral testimony be given under oath and recorded, transcribed, certified and filed); *People v. Peck,* 38 *Cal.App.*3d 993, 113 *Cal.Rptr.* 806 (Cal.App.1974) (requiring that duplicate warrant be signed); *but see People v. Sanchez,* 131 *Cal.App.*3d 323, 182 *Cal.Rptr.* 430 (Cal.App.1982) (holding that unintentional non-preparation of original warrant did not invalidate search where duplicate warrant and other safeguards were met). Similarly, Arizona, which modeled its warrant-issuing process after California's, Ariz.Rev.Stat.Ann. §§ 13–3914, 13–3915 (1982), also requires that oral testimony be sworn and recorded. *State v. Robertson,* 111 *Ariz.* 427, 531 *P.*2d 1134 (Ariz.1975); *see also, State v. Hadd,* 127 *Ariz.* 270, 619 *P.*2d 1047 (Ariz.App.1980).

far-reaching subject matter. Pending the adoption of such a rule, the standards set forth herein shall continue to govern the validity and reasonableness of searches executed pursuant to judicial authorization obtained over the telephone.

Accordingly, the judgment below is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIF-FORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*For reversal*—None.