# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1822-15T2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

G.A.,

    Defendant-Respondent.

_____

Submitted January 19, 2017 — Decided April 20, 2017

Before Judges Alvarez and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-04-0318.

Grace H. Park, Acting Union County Prosecutor, attorney for appellant (Kimberly L. Donnelly, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Triarsi, Betancourt, Wukovits & Dugan, LLC, attorneys for respondent (Steven F. Wukovits, of counsel and on the brief).

PER CURIAM

    On leave granted, the State appeals a November 30, 2015 Law Division order granting defendant G.A.'s motion to suppress

sixty-three baggies of cocaine, a defaced handgun, ammunition, and other evidence seized incidental to the execution of a search warrant.  We now reverse.

The State presented only one witness, Elizabeth Police Detective Jose Torres, the officer who obtained the warrant authorizing the search of defendant's person and home.  Defendant testified, as did his seventy-seven-year-old grandmother in whose home he lived.  She required the services of a Creole interpreter.

On November 29, 2013, Torres, five detectives, and two uniformed patrol officers executed the search warrant.  The two uniformed officers stopped defendant as he was driving out of the apartment parking lot.  Torres approached the car, showed defendant the warrant, and explained it to him.  The two officers "walked" defendant towards his apartment, while Torres met the detectives at the front door.

Once at the apartment door, Torres heard the officers towards the front of the group knock and then insert defendant's key into the lock.  No one answered, and "[n]ext thing I know the door opened."  When Torres entered, he saw defendant's grandmother standing nearby.

Because of his location in the group, Torres could not discern if an officer opened the door by using defendant's key, or if it was opened by defendant's grandmother.  At headquarters, Torres

presented defendant with an inventory detailing the items taken from the apartment, which defendant signed.

Defendant's version of events differed in several important respects. He denied having ever been shown or given a copy of the warrant until he appeared in court on the charges. Defendant claimed that while in his bedroom he was instructed to strip naked, and that once naked, he was handcuffed in the kitchen until the search was completed. He denied hearing the officers knock or announce their presence, or seeing how the door was opened. When he arrived at the top of the stairs leading to the apartment, he saw the door was already ajar. Lastly, defendant denied that any contraband was seized during the search.

Defendant's grandmother's testimony aligned with defendant's. She claimed she was seated on the apartment sofa taking some medication when she saw the door open. Police appeared in the doorway, and when she asked "what's going on[,]" they responded only that it was "police business." Defendant's grandmother denied hearing any announcement or a knock before the police entry, and said she became very "emotional."

Defendant's grandmother agreed that the officers stripped defendant naked and confined him to the kitchen. She added that when the officers left, they gave her defendant's keys and a piece of paper.

A-1822-15T2

The judge who presided over the suppression hearing found Torres credible, and defendant and his grandmother incredible. She did so not only because of the testimony itself, but also defendant's demeanor while testifying. The judge concluded that either defendant's key was used to enter the apartment, "or that the defendant's grandmother opened the door from inside, or perhaps both were done at the same time."

After a detailed analysis of the knock-and-announce doctrine, the judge also concluded that the police actions in this case were objectively unreasonable because although the officers did knock and pause, they "did not announce their presence before entering the apartment." For that reason, the judge held that defendant met his burden to establish the execution of the warrant was unlawful—they "did not both knock and announce[.]" She opined that their failure to announce their presence was unjustified and unlawful.

As a result of the seizure, defendant was indicted for third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3) (count two); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count three); fourth-degree prohibited weapons and devices, N.J.S.A. 2C:39-3(d) (count four); second-degree possession of a firearm in

the course of committing a CDS offense, N.J.S.A. 2C:39-4.1(a) (count five); and fourth-degree possession of a prohibited device, N.J.S.A. 2C:39-3(f) (count six). On appeal, the State contends that the evidence established the officers' entry into the apartment was peaceable, reasonable, and the suppression of the evidence error.

We review a motion judge's factual findings in a suppression hearing with great deference. State v. Gonzales, 227 N.J. 77, 101 (2016). They are upheld "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). The deference with which we review those factual findings is "substantially influenced by [the motion judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161 (1964). We owe no deference to the trial court's legal conclusions or interpretation of the legal consequences that flow from established facts and our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015); State v. Vargas, 213 N.J. 301, 327 (2013).

Once the validity of a search warrant has been established, the burden then shifts to the defendant to establish some illegality in the manner of execution. State v. Robinson, 200

N.J. 1, 7-8 (2009) (citing State v. Valencia, 93 N.J. 126, 133 (1983)).

The purpose of the knock-and-announce rule is to reduce the risk of violence to police and the public, to protect the public's privacy by eliminating the risk of entry into the wrong premises, and in order to prevent property damage. State v. Johnson, 168 N.J. 608, 616 (2001) (citation omitted). The overarching concern in the manner of execution of any warrant, however, is whether "the conduct was objectively reasonable in light of the 'facts known to the law enforcement officer at the time of the search.'" State v. Handy, 206 N.J. 39, 46-47 (2011) (quoting State v. Bruzzese, 94 N.J. 210, 221 (1983), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984)).

There are well-established exceptions to the knock-and-announce rule. Police are relieved from the obligation if knocking would be dangerous, result in the likely destruction of evidence, or the flight of the suspect. State v. Fair, 45 N.J. 77, 86-87 (1965). Where a home is unoccupied, officers are relieved from the obligation to knock and announce. State v. Bilancio, 318 N.J. Super. 408, 417-18 (App. Div.), certif. denied, 160 N.J. 478 (1999). Where no privacy interest is implicated, the knock-and-announce requirement is suspended. State v. Nunez, 333 N.J. Super. 42, 51-52 (App. Div. 2000), certif. denied, 167 N.J. 87 (2001).

6

It is possible in this case that the officers opened the door with defendant's key, and did not announce their presence. If so, that is an improper amendment to the conditions of the warrant set by the neutral magistrate who issued it. Officers are expected to comply with the terms of a warrant.

But in this case, the proofs do not establish that the officers completely disregarded the knock-and-announce requirement. Torres, who was found to be credible, testified that he heard the officers closest to the door knock, although he did not hear any announcement.

Moreover, Torres said he did not know if the door was opened by defendant's grandmother or opened by the use of a key. Since either could have occurred, given his vantage point some feet away from the door, it seems to us the entry was objectively reasonable after the knock without announcement, despite the possibility that the officers may have gained entry by the use of a key. In no-knock cases, entries with a key have been described by our Court as a peaceable means of gaining a peaceable entry. Watts, supra, 223 N.J. at 517 ("Further, given that the police had a warrant for a no-knock entry into defendant's residence, it was objectively reasonable to secure the apartment keys from defendant to avoid having to break down the door or alert other occupants in the apartment."). Use of an occupant's key insures that the officers

enter the correct premises, and avoids the necessity for destruction of the door or other property as they gain entry. The use of a key reduces the risk of violence to police and bystanders.

The officers could have been admitted by defendant's grandmother before any announcement was possible, and from the record it is clear that entry was quick. It is too rigid an application of the doctrine to require the officers to announce their presence if the door is immediately opened after the knock. The identity of the members of the group, which included two uniformed officers, was self-evident once the door opened. Presumably, defendant's grandmother would have understood the word "police," despite not being a native speaker.

This is not a case in which a defendant alleges that the officers deliberately delayed their announcement in order to avoid their legal obligations. Events here happened so quickly that even defendant, while on the one hand saying he heard no knock or announcement, acknowledged he did not actually know how the door opened.

The State also argues that Rule 3:5-7(g) compels reversal: "[i]n the absence of bad faith, no search or seizure made with a search warrant shall be deemed unlawful because of technical insufficiencies or irregularities in the warrant or in the papers or proceedings to obtain it, or in its execution." That rule is

premised on the general proposition courts should be "reluctant to invalidate search warrants based on confusion over jurisdiction or other issues that do not implicate probable cause or the neutrality of the issuing judge." State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009), aff'd, 201 N.J. 229 (2010).

In examining the officers' conduct in light of the ambiguous record, we cannot say the entry was unreasonable. It is uncertain whether the door was opened as a result of the knock or with defendant's key. We do not know the timing, but it may well have made any announcement impractical. Each challenge to the manner of execution of a search warrant, like any other challenge to a search, requires a fact-sensitive analysis of the objective reasonableness of the officers' conduct. Robinson, supra, 200 N.J. at 4.

Defendant bears the burden of establishing the wrongfulness of the manner of execution of this warrant. State v. Sullivan, 169 N.J. 204, 211 (2001) (quoting Valencia, supra, 93 N.J. at 133) (stating that "[a] search based on a properly obtained warrant is presumed valid . . . [and] the defendant has the burden of proving the invalidity of that search"). In this case, the burden has not been met and the officers' failure to announce their presence does not mandate suppression of the contraband. The entry was peaceable, and the failure to announce may have been due to mere

happenstance.  Defendant has therefore not met his burden of proving the invalidity of the search.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1822-15T2