NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1725-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

EDWARD O'DAY,1

 Defendant-Appellant.
_________________________________

 Submitted April 4, 2017 – Decided September 7, 2017

 Before Judges Reisner and Sumners.

 On appeal from Superior Court of New Jersey,
 Law Division, Ocean County, Indictment No. 14-
 09-2469.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Theresa Yvette Kyles, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Frank Muroski, Deputy
 Attorney General, of counsel and on the
 brief).

PER CURIAM

1
 We use the spelling of defendant's name as used in the indictment
and the trial court's order in dispute. However, his name is
spelled "Oday" in the Notice of Appeal and the parties' briefs.
 Following the denial of his motion to suppress, defendant

Edward O'Day pled guilty to two counts of third-degree burglary,

N.J.S.A. 2C:18-2, and third-degree possession of a controlled

dangerous substance, N.J.S.A. 2C:35-10(a)(1). In accordance with

the plea agreement, defendant was sentenced to five years of

special Drug Court probation. Defendant appeals from the order

denying his motion to suppress. For the reasons that follow, we

affirm.

 I.

 The issue at the suppression hearing was whether the Berkeley

Township (township) police had the right to conduct a warrantless

search and seizure at a boarded up property (the house) located

on Route 9. The State presented three witnesses to support its

position that the search and seizure was valid.

 James Sperber, the township's supervisor of the parks

department, testified he was familiar with the house due to his

responsibility in monitoring all of the township's parks and

structures that have code enforcement problems. After receiving

reports from his employees of a home burglary near one of his

offices and a suspicious looking man in the vicinity, Sperber

stated that during next three days he observed a man matching his

employees' description in the same area. The first two days, he

 2 A-1725-15T2
telephoned the Ocean County Prosecutor's Office about the man. On

the third day, he spoke to William Cullen, a township police

detective, about the man, and advised that a board had been removed

from a boarded-up window. According to Sperber, the house was

uninhabited, vacant and boarded up for a long time.

 Cullen testified he investigated the initial burglary report

and township employees told him they saw a man near the burglarized

home. Cullen was also familiar with the house and attested that

it was dilapidated and had wood covering up its windows.

 Following Sperber's telephone call, Cullen and fellow

detective Joseph Santoro met at the house to investigate. No one

responded to their knocks at the door and calls asking if anyone

was inside. At the back of the house, they saw a "For Sale" sign,

and unsuccessfully tried to contact someone at the telephone number

written on the sign. After they were unable to obtain an emergency

telephone number for the house from the police dispatcher, they

reached out to the prosecutor's office and were advised that a

search warrant was not needed to enter the house. They gained

entry through the open window, where the plywood cover had been

removed and a cement block had been placed below the windowsill

that allowed them to climb into the window. Santoro stated that

he and Cullen entered the house to ensure that nobody was inside

before the township would re-secure the boarded-up window. Cullen

 3 A-1725-15T2
similarly stated they entered the house to make sure that it was

safe from children who lived next door.

 In a second floor bedroom, the detectives found a makeshift

bed, two cell phones, a cell phone charger, and a medical document

with defendant's name. Cullen immediately believed the phones and

charger matched the description of items stolen in the home

burglary that he investigated three days earlier. He confirmed

his suspicion when the burglary victims later identified them as

items stolen from their home.

 After the police located defendant and advised him of his

Miranda2 rights, he gave a statement admitting to burglarizing a

township home and putting the stolen items in the house, which he

entered without permission.

 Defendant did not present any witnesses. Following argument,

the motion judge entered an order and rendered an oral decision

denying defendant's suppression motion. She found the State's

witnesses provided credible testimony, which established that the

boarded-up house was uninhabited, abandoned and entered by a

trespasser. She reasoned:

2
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 4 A-1725-15T2
 Both [detectives] testified that they entered
 the home after seeing that it was boarded up
 and had seen it boarded up like that for more
 than 10 years, never seeing anyone on the
 property. They did so only after having done
 a perimeter search, phone calls to a number
 on a sign, to dispatch and the prosecutor's
 office, after knocking and announcing police,
 and with a reasonable belief that they did not
 need a warrant, having safety concerns that
 they needed to clear the house by determining
 that there was no children or other
 individuals hiding or injured inside the
 house. Which was in a deplorable condition.

Citing State v. Brown, 216 N.J. 508 (2014) and United States v.

Harrison, 689 F. 3d 301 (3d Cir. 2012), cert. denied, 568 U.S.

1242, 133 S. Ct. 1616, 185 L.Ed. 2d 602 (2013), the judge found

that defendant he had no right to be in the house and no expectation

of privacy in the house, and that the detectives acted reasonably

in entering the house.

 The judge also found that the search was valid under the

community caretaking doctrine. She determined that the police had

the right to enter the abandoned house, which had been entered by

a trespasser and left open for entry by a board removed from a

boarded-up window, in order to protect the public from serious

injury. This appeal ensued.

 II.

 Before us, defendant raises the following argument:

 THE ARTICLES REMOVED FROM THE HOUSE AT 562
 ROUTE 9 AND FROM MR. ODAY'S PERSON SHOULD HAVE

 5 A-1725-15T2
 BEEN SUPPRESSED BECAUSE THE STATE DID NOT
 PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT
 THE WARRANTLESS SEARCH OF [THE HOUSE] WAS
 JUSTIFIED BY THE ABANDONED PROPERTY EXCEPTION
 OR BY THE COMMUNITY CARETAKING EXCEPTION TO
 THE WARRANT REQUIREMENT.

 A. THE PROSECUTION DID NOT SHOW THAT THE HOUSE
 WAS ABANDONED.

 B. THE PROSECUTION FAILED TO SHOW THAT THE
 DETECTIVES WERE ENGAGED IN COMMUNITY
 CARETAKING WHEN THEY ENTERED THE HOUSE.

 C. SUMMARY

 In our consideration of a trial court's ruling on a motion

to suppress evidence, "[w]e conduct [our] review with substantial

deference to the trial court's factual findings, which we 'must

uphold . . . so long as those findings are supported by sufficient

credible evidence in the record.'" State v. Hinton, 216 N.J. 211,

228 (2013) (quoting State v. Handy, 206 N.J. 39, 44 (2011)). "When

. . . we consider a ruling that applies legal principles to the

factual findings of the trial court, we defer to those findings

but review de novo the application of those principles to the

factual findings." Ibid. (citing State v. Harris, 181 N.J. 391,

416 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L.

Ed. 2d 898 (2005)). However, despite our deferential standard,

"if the trial court's findings are so clearly mistaken 'that the

interests of justice demand intervention and correction,' then the

appellate court should review 'the record as if it were deciding

 6 A-1725-15T2
the matter at inception and make its own findings and

conclusions.'" State v. Mann, 203 N.J. 328, 337 (2010) (quoting

State v. Johnson, 42 N.J. 146, 162 (1964)).

 Both the United States and New Jersey Constitutions protect

individuals against unreasonable searches and seizures "in their

persons, houses, papers, and effects [.]" U.S. Const. amend. IV;

N.J. Const. art. I, ¶ 7. Under the exclusionary rule, evidence

obtained in violation of an individual's constitutional rights

will be excluded as "fruit of the poisonous tree." State v.

Faucette, 439 N.J. Super. 241, 266 (App. Div.), certif. denied,

221 N.J. 492 (2015). Because the search at issue was executed

without a warrant, it is presumed to be facially invalid; to

overcome this presumption, the State must show that the search

falls within one of the well-recognized exceptions to the warrant

requirement and there exists probable cause. State v. Moore, 181

N.J. 40, 44 (2004); State v. Valencia, 93 N.J. 126, 133 (1983).

 We first turn our attention to the trial judge's determination

that defendant had no standing to challenge the search and seizure

because it occurred in an abandoned house where he had no

expectation of privacy. It is well-established that "a person can

have a legally sufficient interest in a place other than his own

home[, such] that the Fourth Amendment protects him from government

intrusion into that place." State v. Stott, 171 N.J. 343, 357

 7 A-1725-15T2
(2002) (quoting Rakas v. Illinois, 439 U.S. 128, 142, 99 S. Ct.

421, 430, 58 L. Ed. 2d 387, 401 (1978)); see also State v. Rose,

357 N.J. Super. 100, 103 (App. Div.), certif. denied, 176 N.J. 429

(2003); State v. Alvarez, 238 N.J. Super. 560, 571 (App. Div.

1990).

 Our Supreme Court has recognized:

 In New Jersey, "a criminal defendant [has
 standing] to bring a motion to suppress
 evidence obtained in an unlawful search and
 seizure if he has a proprietary, possessory
 or participatory interest in either the place
 searched or the property seized." [State v.
 Alston, 88 N.J. 211, 228 (1981)]; accord
 [Brown, supra, 216 N.J. at 548-49].
 "[S]tanding to seek suppression of evidence"
 is a "separate issue" from "the existence of
 a reasonable expectation of privacy," which
 pertains to the merits of the police action.
 [Hinton, supra, 216 N.J. at 235]. Defendant's
 automatic standing to contest the
 constitutional validity of the seizure "does
 not equate to a finding that he . . . has a
 substantive right of privacy in the place
 searched that mandates the grant of that
 motion." Ibid. "[A]lthough we do not use a
 reasonable expectation of privacy analysis for
 standing purposes in criminal cases, we do
 apply that analysis to determine whether a
 person has a substantive right of privacy in
 a place searched or an item seized." [Id. at
 234] (quoting [State v. Johnson, 193 N.J. 528,
 547 (2008)]). "[T]he objective reasonableness
 of the defendant's expectation of privacy in
 that property, for purposes of Article I,
 Paragraph 7, turns in large part on his or her
 legal right to occupy the property at issue."
 [Id. at 236].

 8 A-1725-15T2
 [State v. Randolph, 441 N.J. Super. 533, 548-
 49 (App. Div. 2015) (first, fourth, sixth, and
 ninth alterations in original), certif.
 granted, 224 N.J. 529 (2016).]

However, a defendant does not have standing to challenge a search

and seizure where "the State can show that the property was

abandoned or the accused was a trespasser." State v. Randolph,

228 N.J. 566, 571-72 (2017). The State has the burden of proof

to establish a reasonable expectation of privacy. Brown, supra,

216 N.J. at 527-28.

 In Brown, based upon a totality of circumstances standard,

the Court rejected the State's contention that a row house

subjected to a warrantless search and seizure was abandoned. Id.

at 542. State troopers conducted several hours of surveillance

of the house over the course of two non-consecutive days where

they observed the defendants, who used a key to unlock the house's

padlocked front door in order to enter and retrieve stashed drugs.

Id. at 538. Although the house was in a deplorable condition -

padlocked front and back doors to keep intruders out, broken

windows, trash-littered, and a missing electric meter - there was

no reliable or first-hand testimony regarding the long-term

condition of the house, nor any reasonable attempt by law

enforcement to contact the owner. Id. 540-42.

 9 A-1725-15T2
 Guided by these standards, we discern no reason to disturb

the denial of defendant's suppression motion. There was credible

evidence to support the trial judge's finding that based on the

totality of the circumstances the house was abandoned. Unlike in

Brown, here, the detectives did not conduct a surveillance of the

house and did not see anyone enter the house by using a key to

open a locked door. They were responding to reports that a

suspicious looking man was around the house, which they knew had

been boarded up. After making an unsuccessful effort to contact

someone responsible for the house, the detectives noticed that

someone had apparently trespassed into the house by removing a

board from the boarded-up front window and stepping on a concrete

block to enter through the window. Since the house was abandoned,

defendant did not have standing to challenge the warrantless search

and seizure, which uncovered the burglary victim's property.

Furthermore, without permission to be in the house, defendant had

no expectation of privacy regarding his entry under our federal

and state constitutions.

 Considering we affirm the denial of defendant's suppression

motion due to his lack of standing to challenge the State's

warrantless search and seizure, we need not address the judge's

ruling that there was a valid search and seizure under the

community caretaking doctrine. However, for sake of completeness,

 10 A-1725-15T2
we find it necessary to briefly express our disagreement with the

determination that the doctrine applies here.

 The community caretaking doctrine is an exception to the

warrant requirement. State v. Harris, 211 N.J. 566, 581 (2012).

Our Supreme Court has recognized that "police officers acting in

a community-caretaking capacity 'provide "a wide range of social

services" outside of their traditional law enforcement and

criminal investigatory roles.'" State v. Vargas, 213 N.J. 301,

323 (2013) (quoting State v. Edmonds, 211 N.J. 117, 141 (2012)).

In the context of home searches, our Supreme Court has developed

and applied "a two-prong test" that considers "the totality of the

circumstances" in determining if the emergency-aid doctrine

justifies a warrantless search of a home. State v. Hathaway, 222

N.J. 453, 470, 474 (2015). The State has the burden to show that

 (1) the officer had an objectively reasonable
 basis to believe that an emergency require[d]
 that he provide immediate assistance to
 protect or preserve life, or to prevent
 serious injury, and (2) there was a reasonable
 nexus between the emergency and the area or
 places to be searched.

 [Id. at 470 (quoting Edmonds, supra, 211 N.J.
 at 132)].

 Based upon these standards, we conclude that the community

caretaking doctrine does not apply. The police were unaware of

anyone, including children who lived next door, going into the

 11 A-1725-15T2
house that warranted a reasonable belief that someone was inside

and may need assistance. There was also no response when the

police knocked on the door and called out to see if someone was

inside the house. Hence, there was no emergency to justify entry

into the house to conduct a search to provide aid to anyone.

 Affirmed.

 12 A-1725-15T2