**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3634-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ASHRAF D. ABEDRABBO,

     Defendant-Appellant.

_____

Submitted January 13, 2026 – Decided January 23, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 23-07-0101.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Rachel Glanz, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Gabriella L. Korosec, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Ashraf D. Abedrabbo appeals from a judgment of conviction entered on June 24, 2024 after he pleaded guilty to second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1), and a January 3, 2024 order denying his motion to suppress ten handguns and other related contraband seized following a search of his motor vehicle pursuant to a warrant. We affirm.

I.

We summarize the relevant procedural history and the evidence adduced at the evidentiary hearing conducted on December 12, 2023. New Jersey State Police (NJSP) Detective Roy Sanchez and Sergeant Scott Sanders testified for the State. Defendant did not call any witnesses or offer any other evidence at the hearing.

In March and April 2023, NJSP conducted a firearms trafficking investigation involving defendant. The investigation began when Detective Sanchez "received information from a confidential source regarding an individual that was trafficking firearms into" Paterson. The source "described the individual as an Arabic male in his twenties, approximately [five feet eight inches], with . . . short hair" who drove "a white Mercedes sedan." Detective Sanchez identified the individual as defendant based on his New Jersey driver's

2

license, and determined the white Mercedes was registered to "an individual by the name of Iman Abedrabbo with the same address as [defendant]."

Detective Sanchez received additional information from an independent "second confidential source that also stated . . . there was an individual . . . trafficking firearms from . . . out of state into" Paterson. "[T]he second source provided a telephone number . . . and also stated that the individual, [defendant], would drive a white Mercedes sedan."

After Detective Sanchez received the information from the second confidential source, he "direct[ed] the confidential source to place a phone call [to defendant] in [his] presence" and listened to the conversation. During the conversation, Detective Sanchez "overheard . . . a male voice that the source recognized to be [defendant]. And they were discussing firearms." Detective Sanchez then applied for and obtained a dial number retriever (DNR), which allowed him to "see numbers sent and received from . . . the phone, as well as see the locations."

NJSP also established surveillance at defendant's residence. On April 8, at approximately 7:30 p.m., defendant left his residence in a Volkswagen Atlas, which NJSP identified as a rental vehicle. He was accompanied by a woman later identified as co-defendant Martha Castillo-Medina. "[A] few hours after

3

that, the DNR showed [defendant] exiting New Jersey and entering Pennsylvania." He then "entered Maryland[,] then Virginia. And, on [August 9] . . . the DNR showed [defendant] in the area of Okoa, Tennessee . . .[a]nd . . . the phone remained static in Tennessee . . . for a few days."

Detective Sanchez "directed the second source to place a[nother] phone call" to defendant. During the conversation, Detective Sanchez "once again overheard a male voice that the source and [he] recognized to be [defendant]. And they were . . . discussing firearms that were recently acquired and pricing."

On April 11, Detective Sanchez saw defendant's "phone was leaving . . . Tennessee," on the way back to New Jersey. Detective Sanchez, accompanied by Sergeant Sanders, "established physical surveillance in Pennsylvania, leading into New Jersey." Detective Sanchez and Sergeant Sanders observed defendant's vehicle on Interstate 78 in Greenwich Township. The vehicle was traveling at a high rate of speed, and they conducted a motor vehicle stop. Detective Sanchez testified that as he approached the vehicle, he observed defendant in the driver's seat and Castillo-Medina in the passenger's seat.

A-3634-23

Detective Sanchez removed defendant from the vehicle, "escorted [him] to the front of his car," and directed him to sit on the guardrail.  The video from Detective Sachez's body worn camera (BWC) was played at the hearing.  Defendant admitted he "was going [five] miles over" the speed limit.  He stated he was coming from his "uncle's house" in Allentown, Pennsylvania, "for Easter" where he had been for "about . . . [three] days."  He did not know his uncle's "exact address."  He identified the woman in the car as his "girlfriend . . . Martha," whom he had been dating for "almost a year," but denied knowing her last name.

Sergeant Sanders spoke with Castillo-Medina while she was inside the vehicle.  The video from his BWC was also played at the hearing.  Sergeant Sanders testified Castillo-Medina said she knew defendant "[f]or [three] years" and they were "in a romantic relationship," but she "did[ not] know his last name."  She said she and defendant were "coming from Virginia" where they went to visit defendant's "mom's aunt" for "about [three] days."  She did not know where they were in Virginia or where they stayed while they were there.

After Detective Sanchez advised defendant of his <u>Miranda</u>[1] rights, defendant denied the request for consent to search his vehicle.  Detective

---

[1]  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Sanchez then "asked the [canine] handler" present at the scene "to perform an exterior sniff with his canine of the" vehicle. "The [canine] handler advised that it was a positive alert on the vehicle." The canine sniff was conducted approximately twenty-five minutes after the motor vehicle stop. Defendant and Castillo-Medina were placed under arrest. Defendant had "a little over [$]12,000" in cash "on [his] person."

Detective Sanchez applied for a search warrant for the vehicle, which was granted by a Superior Court judge. "Ten firearms and . . . a variety of magazines" some which "were high-capacity magazines capable of holding more than [ten] rounds" were recovered from duffel bags in the trunk.

On July 21, 2023, a State grand jury returned Indictment No. 23-07-00101-S, charging defendant with: fourth-degree conspiracy to transport firearms, N.J.S.A. 2C:39-9(d) and N.J.S.A. 2C:5-2; ten counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); fourth-degree transporting firearms, N.J.S.A. 2C:39-9(d); fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j); third-degree money laundering, N.J.S.A. 2C:21-25(a); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

## II.

On August 8, 2023, defendant filed a notice of motion to suppress seeking an

> [o]rder suppressing any and all evidence seized from the person, environs and/or vehicle occupied by . . . [d]efendant on April 11, 2023, and a subsequent search of the contents of said vehicle that occurred on . . . April 12, 2023 (pursuant to a warrant that was premised on facts developed during an unconstitutional stop, prolonged detention[,] and utilization of unwarranted investigative methods), including . . . ten . . . firearms.

The motion stated, "any searches and seizures conducted on that date were conducted by law enforcement without the benefit of a warrant, except that evidence obtained thereby was utilized subsequently to obtain a search warrant for said vehicle." The motion also stated defendant would "rely on a brief to be submitted in response to an initial brief to be submitted by the State . . . in accordance with the Rules of Court."

After the State filed its brief, defendant filed a brief in support of his motion to suppress. Defendant "concede[d] that there was reasonable suspicion to conduct an investigatory stop" of his vehicle and clarified that his "motion [did] not seek suppression of any statements made by defendant to law enforcement." He argued the stop was extended unreasonably by the canine

sniff and "if it is established that the stop exceeded lawful parameters, the warrant that was issued on the basis of information that was developed during the stop must be invalidated."

Defendant did not argue the search warrant affidavit was insufficient to support a finding of probable cause. Instead, he asserted he was

> entitled to a testimonial hearing at which the underpinnings of the affidavit submitted in support of the request are tested by counsel. At the very least, counsel should be able to question the State's expert as to the ability of the canine generally and this canine specifically to detect an unknown explosive in the field.

He also requested "a testimonial hearing on the . . . motion."

On December 12, 2023, the court conducted an evidentiary hearing as requested by defendant. Detective Sanchez and Sergeant Sanders testified for the State as summarized previously. After the State rested, the court asked defense counsel if there were any other witnesses. Counsel responded, "[d]efense rests." Defendant did not introduce the search warrant affidavit or the search warrant itself at any time prior to or during the hearing.

The court then heard oral argument. Defense counsel argued "[t]he search warrant that [was] issued was based on information, in part, that [law enforcement] received at the roadside stop . . . that should have been given after

8

[defendant] was Mirandized." Counsel contended "the search warrant would not have been granted, but for . . . these interrogations by the side of the road."

Counsel also asked the court to consider "[t]he search warrant . . . was also based on the [canine]'s hit. And there is no conclusive evidence . . . that the dog hit in the area where they ended up finding these weapons." She argued the NJSP "reports indicate that the hit was made on the . . . driver's side rear door or something like that. . . . So that information was inaccurate, as far as the basis for the search warrant."

On January 3, 2024, the court entered an order denying defendant's motion to suppress supported by a written opinion. The court noted defendant conceded the motor vehicle stop was proper, and determined (1) the "detectives were lawfully permitted to extend the stop for approximately [twenty-five] minutes to execute a canine sniff on . . . defendant's vehicle"; (2) "based upon the totality of the circumstances, there certainly existed probable cause for the [c]ourt to issue a search warrant for defendant's vehicle"; and (3) "because . . . defendant was not in custody while asked the initial itinerary questions regarding his

travel, persons in the vehicle, and general biographical questions, these statements are not subject to suppression."[2]

On May 13, 2024, defendant pleaded guilty to second-degree certain persons not to have weapons. On June 24, he was sentenced in accordance with the plea agreement. This appeal followed.

III.

On appeal, defendant raises a single point for our consideration.

> THE MATTER MUST BE REMANDED TO THE TRIAL COURT DUE TO THE COURT'S FAILURE TO ABIDE BY THE FOUR CORNERS OF THE AFFIDAVIT RULE WHEN ASSESSING THE LEGALITY OF THE SEARCH OF DEFENDANT'S CAR.

Specifically, defendant argues the "court's decision to uphold the search of [defendant's] car was constitutionally improper" because the court "analyzed probable cause on the basis of the testimony presented at the suppression hearing" and "it is unclear whether all the facts . . . were actually presented to

---

[2] Defendant did not brief any arguments concerning the court's determinations relating to the motor vehicle stop, the canine sniff, his statements to law enforcement, or any other matters relating to his conviction. As a result, those arguments are deemed waived. State v. Huang, 461 N.J. Super. 119, 125 (App. Div. 2018); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026) ("It is, of course, clear that an issue not briefed is deemed waived").

the" judge who issued the warrant. "The court thus failed to undertake the critical analysis of whether the warrant affidavit established probable cause to search [defendant's] car."

Because defendant never argued the search warrant affidavit was insufficient to establish probable cause, we decline to consider this argument on appeal. We generally decline to consider questions or issues raised for the first time on appeal. This is so because "the points of divergence developed in proceedings before a trial court define the metes and bounds of appellate review." State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 19 (2009)). "For sound jurisprudential reasons, with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" Ibid. (quoting Robinson, 200 N.J. at 20 (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J 229, 234 (1973))).

Defendant contends his motion to suppress included a challenge to the sufficiency of the search warrant affidavit. This argument lacks merit.

"[W]hen a search is based on a warrant, the search is presumptively valid." State v. Bivens, 226 N.J. 1, 11 (2016) (citing State v. Valencia, 93 N.J. 126, 133 (1983)). "When contesting the search at a suppression hearing, the defendant

must prove that the warrant was based on insufficient probable cause to justify its issuance." Ibid. (citing Valencia, 93 N.J. at 133). That "probable cause determination must be made based on the information contained within the four corners of the supporting affidavit." Ibid. (citing Schneider v. Simonini, 163 N.J. 336, 363 (2000)).

In contrast, a "search conducted without a warrant is presumptively invalid." Ibid. "Thus, the State has the burden of showing that one of the 'judicial cognizable exception[s] to the warrant requirement' applies to the warrantless search." Ibid. (alteration in original) (quoting Valencia, 93 N.J. at 133). Owing to these shifting burdens, Rule 3:5-7(b) provides that when a defendant files a motion to suppress evidence seized without a warrant, the State must file its brief in opposition to the motion first, and then the defendant is permitted to file a responsive brief. On the other hand, when a defendant challenges a "search . . . made with a warrant, a brief . . . shall be submitted with the notice of motion." Ibid.

Here, defendant's notice of motion expressly stated he was challenging "searches and seizures . . . conducted by law enforcement without the benefit of a warrant." His only challenge to the subsequent warranted search was that

12

"evidence obtained [without a warrant] was utilized . . . to obtain a search warrant."

In accordance with Rule 3:5-7(b), because his motion was one to suppress evidence seized without a warrant, his notice of motion stated he would "rely on a brief to be submitted in response to an initial brief to be submitted by the State." Defendant's claim on appeal that he was challenging both the warrantless search and the search with a warrant is directly contradicted by his notice of motion, his brief in support of the motion, and defense counsel's argument at the evidentiary hearing.

In addition, defendant was afforded an evidentiary hearing and had the ability and opportunity to make any argument, including an argument that the search warrant affidavit was insufficient. At the hearing, defendant failed to call any witnesses or introduce any evidence, including the search warrant affidavit or the search warrant itself. The only argument defendant did make was that the NJSP reports regarding the canine sniff, not the search warrant affidavit, may have been incorrect.

Defendant did not make any argument regarding the sufficiency of the search warrant affidavit prior to or during the hearing. If defendant was challenging the sufficiency of the search warrant affidavit, it was his obligation

13

to "prove that the warrant was based on insufficient probable cause to justify its issuance." Bivens, 226 N.J. at 11. As a result, defendant waived that argument and cannot claim on appeal the court failed to consider the sufficiency of the search warrant affidavit.

Defendant's contention that remand is required because the court improperly found probable cause for the search warrant based on the testimony at the evidentiary hearing is unpersuasive. As we discussed, defendant never challenged the sufficiency of the search warrant affidavit and therefore that argument is waived. The court's determination that the evidence produced at the hearing established probable cause was, therefore, unnecessary to resolve the issues presented. There is no reason for us to remand for a new suppression hearing because the court included unnecessary legal analysis in its opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division